[SARATOGA SPECIAL TERM, September 16, 1856. *Rosekrans,* Justice.]

---

CHARLES DEVENDORF, Receiver of the American Mutual Insurance Company, *vs.* ALBERT BEARDSLEY.

An insurance company, organized under the general insurance law of April 10, 1849, is, by virtue of the act to provide for the formation of fire insurance companies, passed June 25, 1853, made subject to its provisions; and premium notes received after the latter act took effect are to be made to contribute towards the payment of losses and expenses, as therein provided.

Before insolvency occurs, assessment by the directors is a pre-requisite. After insolvency, a receiver appointed under section 39, 2 *R. S.* 463, takes charge of the property and effects of the company; its deposit notes are assets in his hands; the premium notes are not due, but only to become due when the extent of their liability is determined by assessment; and before an action can be brought, notice must be given of the assessment, and personal demand made. Such assessment may be made by the receiver.

No action can be sustained upon a premium note, given since the act of 1853

Devendorf *v.* Beardsley.

took effect, to a mutual insurance company, except it be to pay for losses or expenses actually accrued while such note was in force, and after assessment has been made.

Assessment, or apportionment, is a condition precedent, necessary to be averred in the complaint, and proved on the trial.

An order of the court, directing the receiver to "prosecute and collect the whole amount unpaid on the deposit and premium notes, by any and all legal and proper ways and means," will not authorize the receiver to sue without having made an assessment; inasmuch as the "amount unpaid" on a note, can only be determined by assessment.

Where a person is appointed the agent of an insurance company and empowered to solicit and receive risks of insurance; to receive applications for insurance; and to take premiums and premium notes therefor, this constitutes him a general agent of the company, for the transaction of that particular kind of business; and the company is bound by his fraudulent representations, made in procuring insurances and premium notes.

When a party has been induced to enter into a contract by fraud, he may, on discovering the fraud, rescind the contract; and by restoring the other party to the condition in which he stood previous to making the contract, he may claim a return of what he has parted with, provided he does so at the earliest moment after discovering the fraud.

But where fraud is set up as a defense to an action on a contract, the defendant must aver, in his answer, that he has done all in his power to restore the plaintiff to his former condition; otherwise he cannot prove the fact, on the trial.

APPEAL from an order made at a special term, overruling a demurrer to the defendant's answers. The plaintiff in his complaint alleged that "The American Mutual Insurance Company" was duly formed, incorporated and organized, under the general law of 1849, in June, 1850, and authorized to make insurances, as allowed by section 1, sub. 2, of said act. That policies of insurance were issued by said corporation, and that it continued to carry on the business of insurance, at Amsterdam, until November, 1857. That said corporation being then insolvent, a decree of the supreme court was made, on due notice, declaring that it had forfeited its corporate rights and privileges, and perpetually enjoining its officers and agents from exercising any of its corporate rights, privileges and franchises, and sequestrating its stock, property and effects. That by said decree a reference was ordered, to appoint a receiver, and that the plaintiff was appointed receiver by the referee,

with the usual power and authority of receivers in like cases, and that having duly 'filed the requisite security, he entered upon the discharge of his duties.

That among the assets of said corporation was the following note, made by the defendants : " For value received in policy No. 13,106, dated February 28th, 1854, issued by the American Mutual Insurance Company, we promise to pay the said company the sum of five hundred and twenty-five dollars, in such portions and at such time or times as the directors may, agreeably to their charter and by-laws, require." That upon such note and the application accompanying the same, a policy of insurance was issued, bearing even date therewith. That in February, 1855, by an order of said supreme court, the plaintiff, as such receiver, was authorized and empowered to prosecute for and collect the whole amount unpaid on the deposit and premium notes held by said corporation, by any and all legal and proper ways and means, or make such an assessment on the said notes, in either or both classes thereof, as might be necessary to pay the debts of the said company. That said order directed that the notes taken by said corporation after its organization, and in the farmers' class, be assessed or collected to pay the losses, debts and expenses in that department, and the residue of the notes be assessed and collected to pay the debts and expenses of the second class. That the plaintiff ascertained that the probable amount of losses by fire, and other liabilities of said company, exceeded the amount of its assets, and that said defendant's note, to the amount of five hundred and twenty-five dollars, was required to be paid for the purposes aforesaid, for losses or damages sustained by persons insured, and expenses accrued only whilst said note was in full force and effect, of which the defendants had notice ; yet, &c.

To this complaint the defendant interposed three answers : 1st. A general denial. 2d. That he was induced to take a policy from such company, and give the note in question, by the false and fraudulent representations of one Reynolds, the lawfully authorized agent of said company, that its cash capital then on hand, over and above its debts and liabilities,

Devendorf v. Beardsley.

exceeded $275,000; averring insolvency at the time, &c. 3d. That by reason of this insolvency of the said company at the time of issuing the policy for which this note was given, there was no consideration for the note.

The plaintiff demurred to the second and third answers, on the ground that neither stated facts sufficient to constitute a defense to the action.

*D. P. Corey*, for the plaintiff.

*W. B. Worden*, for the defendant.

*By the Court*, JAMES, J. The plaintiff, as receiver of "The American Mutual Insurance Company," takes its notes and assets subject to all the conditions and legal disabilities with which they were tramelled in the hands of the corporation itself; he cannot impeach or disaffirm its authorized acts, nor the authorized acts of its agents. (*Hyde v. Lynde*, 4 *Com.* 387.) If a note in the hands of the corporation was void, or incapable of enforcement, by reason of fraud or illegality in its procurement or inception, passing it into the hands of a receiver does not purge it of those defects. In such cases the receiver stands precisely in the shoes of the corporation; but an obligation assumed or contract made by a corporation not within the scope of its powers, or forbidden by law, may be avoided by a receiver. He is an officer of the court, a trustee for the creditors, and a representative of the corporation.

The second answer avers " that Reynolds was a duly authorized agent of the said insurance company, and empowered by it to solicit and receive risks of insurance; to receive applications from others for such insurance, and to receive premiums and premium notes therefor." This constituted him a general agent for the company for the transaction of that particular kind of business. (*Dunlap's Paley on Agency*, 199, 200.) Were he but a special agent, the corporation would be bound by his fraudulent representations in procuring, insurances and premium notes. (*Sanford* v. *Handy*, 23 *Wend.* 260. *Nelson*

v. *Cowing,* 6 *Hill,* 336.) In *Story on Agency,* §§ 134 and 135, it is said, "where the acts of the agent bind the principal, there his representations, declarations and admissions, respecting the subject matter, will always bind him, if made at the same time and constituting a part of the *res gestæ.* Indeed, for most practical purposes, a party dealing with an agent who is acting within the scope of his authority and employment, is to be considered as dealing with the principal himself. If it is a case of contract, it is the contract of the principal. If the agent, at the time of the contract, make any representation, declaration or admission, touching the matter of the contract, it is treated as the declaration or admission of the principal himself." "These principles are fully borne out by the several authorities there referred to—are founded in good sense, and with a just conception of the commercial and other business transactions of life, from which they have been dervied;" and have been recognized as sound by repeated adjudications in this state. (23 *Wend.* 260. 3 *Hill,* 262. 6 *id.* 338.)

In this case the agent was not specially authorized, with limited instructions, to induce the defendant to take a policy of insurance in the company and give his premium note therefor; his powers were more extensive; he was furnished with a roving commission to solicit policies, premiums and premium notes. It was a particular department of business connected with said corporation, wherein he was authorized to act without special instructions; and in the absence of such instructions to the contrary, the right to use the ordinary means and inducements to accomplish the end is implied. (23 *Wend.* 267.) "Where a person is engaged in a particular department of business, and is employed to do an act within his line, with *special instructions,* there the general powers, derivable from the nature of his ordinary employment, *will control the limitation;* he will be held to possess such general powers in the *particular instance,* as his ordinary occupation fairly imports to the public; but in the absence of any such implication of general power, the limitation will control." (23 *Wend.* 266. 13 *id.* 521.) This case is clearly within such rule. The public knew

Devendorf v. Beardsley.

nothing of the company for whom the agent was seeking insurance risks, and what more natural than that those solicited to take policies should desire to know something of the character, capital and means of the corporation, before becoming members; and of whom could inquiry be made, and who more likely to know than the agent? The corporation was bound to anticipate that such inquiries would be made, and to know that the agent, whether general or special, bound the principal by his answers and representations in reply thereto. It would be intolerable if the principal could avail himself of a contract procured by the false and fraudulent representations of his agent, and not be bound by the fraud. When a party has been induced to enter into a contract by fraud, he may, on discovering the fraud, rescind the contract, and, by restoring the other party to the condition in which he stood before the contract, claim a return of what he has parted with, provided he do so at the earliest moment after discovering the fraud. (1 *Denio*, 69.) That the defendant did this, is not averred in the answer, and unless averred, the fact could not be proved on the trial. (2 *Com.* 361.) For that reason the answer is insufficient.

The third answer is also insufficient. An insolvent insurance company may make a valid policy and acquire a good title to a premium note, if the transaction be not tainted with fraud.

The defendant, however, attacks the complaint, and insists that it does not state facts sufficient to constitute a cause of action, and claims that the order of the special term should be affirmed upon the well settled rule of pleading, as well under the code as before, that judgment on demurrer will always be given against the party committing the first error in substance.

It appears by the complaint, that the insurance company, which the plaintiff claims to represent, was organized under the general insurance act of 1849, and commenced its business in June, 1850. In 1853, an act entitled " An act to provide for the formation of fire insurance companies," (*Laws of* 1853, *p.* 904,) was passed by the legislature. It repealed the act of 1849, and made the then existing corporations, organized under the act of 1849, subject to its provisions, (§§ 20, 28.)

Both acts contemplate as capital two kinds of notes. One, advance notes, as a basis upon which to organize the company and form a capital with which to commence business; the other, notes given as a part of the premium upon policies actually issued after organization. The *first class*, under the act of 1849, (§ 5,) are required to be made payable at the end of, or within, twelve months from date, and are declared *capital stock, valid, negotiable* and *collectable,* for the purpose of paying *any losses* that may accrue. By the act of 1853, (§§ 6, 13,) such notes are required to be made payable, in part, or in whole, at any time when the directors shall deem the same requisite for the payment of losses and expenses, are declared *capital stock,* and required to remain as security *for all losses and claims,* until the accumulation of the profits shall equal the cash capital required, &c., each note decreasing proportionately as the profits are accumulated. The act of 1849 made no distinct provision respecting the *second class* of notes, but left them to be provided for by the charter and by-laws of each corporation, (§§ 10, 12;) while the act of 1853 provides "that any note deposited subsequent to the organization of any company may, at the expiration of the time of such insurance, be relinquished and given up to the maker upon his paying the proportion of all losses and expenses which may have accrued thereon during the term," and empowers the directors to determine the amount to be given in such cases; declares persons becoming insured in such company members thereof, during the period of such insurance, and bound to pay for losses and expenses accruing, in proportion to the amount of their deposit notes. It also specifies what the charter of each organized company shall ·contain, and authorizes it to make by-laws. (§§ 4, 11.)  I shall hereafter, in this opinion, designate the first of these two classes of notes as "stock notes," the second as "premium notes," and both, jointly, as "deposit notes."

The "stock notes," whether given under the act of 1849 or 1853, are capital stock, and are liable to their full amount for *any* and *all losses* and *expenses* which may arise against the corporation, except in the case of accumulations as provided by

Devendorf v. Beardsley.

the act of 1853; but "premium notes" are different in their inception and purposes.

In this case the contract is " to pay the company in such portions and at such time or times as the directors may, agreeably to their charter and by-laws, require;" but the complaint does not set forth or state what the charter and by-laws of said company require. If the charter and by-laws are different from, or affected by, the provisions of 1853, they should have been set forth in the complaint, so that the defendant's liability would have clearly appeared. Such a note is payable on demand; but the demand must be made in pursuance of the charter and by-laws of the corporation, or the provisions of the act of 1853. This note having been made and delivered after the act of 1853 became a law, it must be governed by it. (§ 21.) Section 13 of said act declares, that before the corporation can sue for and recover on such note, the directors must ascertain and determine the sum to be paid by each member thereof, which shall be in proportion to the original amount of the note; publish the same; suffer thirty days to elapse after such publication; and make personal demand. It is clear, by the terms of the note and the provisions of said act, that the maker thereof is only liable for the proportion of losses and expenses accruing while it was in force; and before demand for payment can be made upon him, the amount of that liability must be determined by assessment. That should be done by ascertaining the losses and expenses accruing while such note was in force, the number and amount of other " deposit notes" liable to contribute to such losses and expenses, and by apportioning the same upon the whole of said notes which are solvent. (2 *Kern.* 479.) Such is the course to be pursued before insolvency, and the rights of the makers of " deposite notes" in this particular are not changed or affected by the insolvency of the corporation.

By 2 *R. S.* 463, § 36, it is declared, that whenever a judgment has been obtained against a corporation incorporated under the laws of this state, and an execution issued thereon shall have been returned unsatified, this court may, upon the petition of such creditor, sequestrate the stock, property, things in action

and effects of such corporation, and appoint a receiver of the same. Section 39 provides, that whenever any insurance company shall have become insolvent, &c. the court may by injunction restrain such officers from exercising any of its corporate rights, privileges, franchises, &c., until the court shall further order. By section 40, such injunction may issue on the application of any creditor, &c., upon action commenced, or petition filed for that purpose, and upon due proof of the facts. in the last section required. Section 41 declares, that upon such application being made, and in any stage of the proceedings thereupon, the court may appoint one or more receivers to take charge of the property and effects of such corporation, and to collect, sue for and recover the debts and demands that may be due, and the property that may belong to such corporation. By what proceeding, upon whose action or petition, and under which section of the statute the plaintiff was appointed receiver of the "American Mutual Insurance Company," does not expressly appear from the complaint. If under the 36th section, the court can only sequestrate the property of the corporation, and the plaintiff is merely a common law receiver, to protect the fund during the litigation of the original action. If under the 39th section, the court may restrain the corporation from the exercise of its franchises by injunction, and the receiver, by section 42, is declared to possess all the powers and authority conferred upon receivers appointed in case of the voluntary dissolution of a corporation. That power and authority is defined in sections 67, 68 and 69, 2 *R. S.* 469. Section 67 vests the receiver with all the estate, real and personal, of such corporation, for the benefit of its creditors and stockholders; and section 69 declares, that if there shall be any sum remaining due upon *any share of stock subscribed* in such corporation, the receiver shall immediately proceed and recover the same, &c. The plaintiff insists that his appointment is under section 39, 2 *R. S.* 463, and claims the powers incident to such an appointment. This action is not based upon an assessment, but the plaintiff predicates his right to recover the whole note upon the authority given him by section 69, as so much re-

maining due upon the stock subscribed in such corporation. If this were one of the original "stock notes," there would be much plausibility in the assumption; but that section has no application to a "premium note." Such note is not a "stock note," nor is it a sum remaining due and unpaid upon any share of stock subscribed in said corporation; in the sense in which those terms are used in that section.

I am aware that the sixth district has held, in *Hyde* v. *Beardsley,* a case not reported, "that a receiver of a mutual insurance company was entitled to collect the whole amount of the premium notes without assessment, under and by virtue of the power and authority conferred upon him by section 69; and if the debts of the company were not sufficient to require the whole to be paid in, the surplus might be refunded." This case is referred to in 12 *Barb.* 671. But if that decision extends so far as to include within it those notes by me denominated "premium notes," it must be disregarded. The application of such a principle to that class of notes would violate the express letter of the contract, defeat the intention of the parties, and subvert the spirit of the act itself. Although it be conceded that "premium notes" constitute capital, and that the insured are members of the company; yet, such notes are not shares of stock, nor due for shares of stock; nor are the insured stockholders, in the legal or legitimate sense in which that term is used or understood.

The system to be deduced from the several enactments is this: An insurance company, organized under the act of 1849, is, by virtue of the statute of 1853, made subject to its provisions; and "premium notes" received after that act took effect are to be made to contribute towards the payment of losses and expenses as therein provided. Before insolvency, assessment by the directors is a pre-requisite. After insolvency, a receiver appointed under section 39, 2 *R. S.* 463, takes charge of the property and effects of the company; its "deposit notes" are assets in his hands; the "premium notes" are not due, but only to become due, when the extent of their liability is determined by assessment; and before action is brought, notice

Devendorf *v.* Beardsley.

must be given of the assessment, and personal demand made. Such assessment may be made by the receiver. (*Laws of* 1852, *p.* 67.)

It follows, from these conclusions, that no action can be sustained upon a "premium note" given, since the act of 1853 took effect, to any mutual insurance company, except it be to pay for losses or expenses actually accrued while such note was in force, and after assessment. Assessment, or apportionment, is a condition precedent, necessary to be averred in the complaint and proved on the trial. The complaint contains no such averment, and for that reason it is insufficient.

The order of court averred in the complaint, even if sufficiently set forth, would not aid the plaintiff. It merely directs the receiver to "prosecute and collect the whole amount unpaid on the deposit and premium notes by any and all legal and proper ways and means," &c. As I have shown, the "amount unpaid" on this note can only be determined by assessment, and unless that be done, its prosecution would not be legal or proper.

The order of the special term is affirmed.

[CLINTON GENERAL TERM, May 5, 1857.   *James, Gould* and *Rosekrans,* Justices.]