WILLIAM H. ELLIS *v.* THE ALBANY CITY FIRE INSURANCE
COMPANY.

(GENERAL TERM, THIRD DEPARTMENT, FEBRUARY, 1871.)

When one following the business of an insurance agent has authority from
an insurance company to solicit and act on proposals for insurance, and
to receive the premiums therefor on its behalf, the public may assume that
he is authorized to make insurances for it in the ordinary way; and this
is so notwithstanding the company have placed special restrictions upon
his powers; *e. g.*, where he is restricted to making insurance by policies
countersigned by himself, he has, presumptively, authority to make
insurances verbally.

A power of attorney from an insurance company giving one authority as
agent, to receive proposals for, and make insurances by policies counter-
signed by himself, also to renew the insurances, assent to assignments
and transfers and do all lawful acts and business, pertaining to his
agency, which may, from time to time, be given him in charge by the
company, does not constitute him a general agent for the company.

MOTION for a new trial upon a case and exceptions ordered
to be heard in the first instance at General Term. The facts
appear in the opinion of the court.

*Matthew Hale,* for the plaintiff.

*Amasa J. Parker,* for the defendant.

Present — MILLER, P. J., POTTER and PARKER, JJ.

By the Court — PARKER, J. This was an action for an
alleged insurance on cotton at Appalachicola, Florida. On
the trial at the Albany Circuit, the judge directed a verdict
for the plaintiff with leave to defendant to make a case and
exceptions, and directed that they be heard in the first instance
at the General Term.

In November, 1865, C. F. McCoy was appointed agent of
the defendant at Augusta, Georgia, under a power of attor-
ney, which is as follows: "Be it known that C. F. McCoy,

of Augusta, State of Georgia, is hereby duly appointed
and constituted an agent of the Albany City Fire Insurance
Company at Augusta, during the pleasure of said company;
as agent he is authorized and empowered to receive proposals
for insurance against loss or damage by fire, and to make
insurance by policies of the said Albany City Fire Insurance
Company, to be countersigned by the said C. F. McCoy, and
to renew the same, to assent to assignments and transfers, and
to do all lawful acts and business pertaining to said agency
which may from time to time be given him in charge by said
company." This was dated November 5th, 1865. The
insurance in question is claimed to have been made by parol
in January, 1866, for one month, running from the 15th of
January, and was for $6,100 on "cotton at Appalachicola."
This cotton had been insured by McCoy from month to month
in several companies for which he was agent (this company
among the rest), from the November previous, when the
cotton was at a place called Howard's Landing, on the
Chatahoochie-river, under a general arrangement between the
plaintiff and McCoy, that the latter should keep the cotton
insured until it should be put on board a ship for Liverpool;
which was all the agreement in reference to the insurance made
between the plaintiff and McCoy. The cotton was awaiting
removal to Appalachicola to be shipped thence to Liverpool.

The risk in question was entered by McCoy on his register,
as he testifies, between the 21st and 23d of January, and was
dated back to the 15th, as he had heard that the cotton had
left Howard's Landing and had probably arrived at Appala-
chicola by the 15th. The entry in his register was as fol-
lows: "No 62 (his number), 21,817 (the company's number),
assured W. D. Ellis for one month from January 16th 1866,
on cotton at Appalachicola, on the 15th of February." No
policy was made out till the summer after the fire, and the
plaintiff testifies it was not delivered to him till February
8th, 1867. McCoy made monthly returns of the entries on
his register to the defendant. Upon his report of transac-
tions for January, 1866, which is dated February 9th, 1866,

appear the following entries: "No. 21,810, W. D. Ellis (commencement of risk), January 12th, on cotton at Howard's Landing, in a wooden building on the Chatahoochie river, $5,000. No. 21,810. Canceled, no risk having been incurred." No. 21,817, W. D. Ellis, (term one month (commencement of risk January 15th) (expiration of risk February 15th, copy of policy) on cotton, viz., the cotton in 21,810, Appalachicola (amount insured) $6,100. Rate ¾ (amount of premium) $45.75." At the time of the fire the cotton was lying on Ormand's wharf, at Appalachicola where it arrived on or about January 15th, and was immediately unloaded upon the wharf, where it remained until it was burned; not having been in any warehouse at that place. The fire, as shown by the proof of loss submitted by the assured to the company, originated from a spark from a steamboat. In the proof of loss, which was furnished to the defendant in December, after the fire, the property is described as follows: "On about 100 bales of cotton, at Appalachicola, being in course of shipment from a boat in the river to a vessel in the bay." The defendant was never informed until the proofs of loss were sent in, that the cotton was not in a building when insured, nor that it was left on the wharf; nor that the insurance was by parol, and not by a written policy. McCoy had been furnished by defendant with printed blank policies, signed by the president and secretary, and a place left to be countersigned by the agent. The premium for the insurance was paid by plaintiff to McCoy, and was forwarded to the defendant early in February. The same cotton was under insurance, through McCoy, as agent, in other companies; the whole insurance being $26,100. Some communications in reference to the loss passed between the defendant and McCoy, after defendant was notified of the fire by McCoy's letter of 5th of March, 1866.

The defendant's counsel insists that McCoy had no authority to insure by parol, and his act was void and inoperative as to the company.

The first inquiry, then, is as to the extent of the authority actually conferred upon him by the letter of attorney.

By the first clause thereof he is appointed the defendant's agent at Augusta. The next clause defines the agency, and the agent's authority, as follows : " As agent, he is authorized and empowered to receive proposals for insurance against loss or damage by fire, *and to make insurance by policies* of the said Albany City Fire Insurance Company, to be countersigned by said O. F. McCoy." This is all the authority given in reference to the *making of insurance.* The subsequent parts of the instrument give the agent authority " to renew insurances so made ; to assent to assignments and transfers, and to do all lawful acts and business pertaining to said agency (so defined) which may from time to time be given him in charge by said company." This last clause cannot be deemed to enlarge the powers already specifically given ; for it is limited by them, and also by the subsequent action of the company as to what " acts and business" shall " be given him in charge."

There is clearly nothing in the letter of attorney making McCoy a general agent, with power to bind the company by insurances made by him, in any other way than by *policies* of the company countersigned by him.

The next inquiry is, had the plaintiff the right to infer, as against the defendant, from the circumstances of the case, that the agent had authority to make the contract which he did make with him ?

And this is a question by no means free from doubt, under the authorities cited by the plaintiff's counsel.

McCoy was in the insurance business as an agent for several companies ; and when the defendant commissioned him as its agent, it held him out to the public as an agent authorized to insure property in the Albany City Fire Insurance Company against loss or damages by fire. The public were authorized, I think, to infer that they might contract with him in the ordinary mode of obtaining insurance. It was said by NELSON, Ch. J., in delivering the opinion of the court

in *Sandford* v. *Handy* (23 Wend., 260, 266): "When a person is engaged in a particular department of business, and is employed to do an act within his line, *with special restrictions*, then the general powers derivable from the nature of his ordinary employment will control the limitation; he will be held to possess such in the particular instance as his ordinary occupation fairly imports to the public. And this is quoted by the court in *Devendorf* v. *Beardsley* (23 Barb., 656, 660), as, in principle, applicable to the case of an insurance agent acting for the company. In the case at bar, the agent had authority to receive and act upon proposals for insurance; that is, to make the contract of insurance; also, to receive the premium for insurance. This, if it had been done by the principal itself, would have been sufficient to bind it without a written policy. (*Trustees of First Baptist Church* v. *Brooklyn Fire Ins. Co.*, 19 N. Y., 305.) Now, although this agent was limited in his commission, in making insurance, to do it by a policy of insurance, yet, I think, since he was in the position of an insurance agent, authorized by the defend-ant to solicit and act upon proposals of insurance, the public had the right to assume that he was authorized to make insurance in the ordinary way, as though the restriction did not exist. Ordinarily, indeed it may be said uniformly, the terms of insurance are agreed upon before a policy is drawn and executed; and, when the premium is paid, such arrangement is effectual as an insurance contract. The plaintiff's arrangement with McCoy was, I think, in this view, authorized. In *Post* v. *Ætna Ins. Co.* (43 Barb., 351), the question was whether the agent had authority to make a parol renewal of the policy. It did not appear in evidence that his commis-sion, as agent, gave him such authority, but he was authorized to accept risks, to agree upon and settle the terms of their insurance, and to carry them into effect by issuing and renew-ing policies in behalf of the defendant; and from this the court held the agent authorized to renew by parol; although the blank policies and certificates of renewal furnished him for use by defendant, specified they should not be valid until

countersigned by the agent. (See, also, *Perkins* v. *Washington Ins. Co.*, 4 Cow., 645.)

Upon the whole, I am inclined to the opinion that the agreement made by the agent with the plaintiff, the premium having been paid before the loss, was binding upon the defendant.

The objection, made by the defendant's counsel, that the description of the property claimed to have been insured was not correctly reported to the company, cannot, in the absence of proof of the fraud and collusion set up in the answer between McCoy and the plaintiff, be used against the plaintiff in this suit. The report was made by the defendant's agent, who alone is responsible to defendant for it. The same is true of any fraud practiced upon defendant by the agent in his report, leading defendant to understand that the cotton was in a wooden building, when, in fact, it was on the wharf at a distance from the steamboat. This was the agent's fault, in which, so far as appears, the plaintiff had no complicity in regard to the description of the property insured. I think it was sufficiently definite for identification. In the contract between McCoy and the plaintiff, it appears, from McCoys entries, that it was well identified. It was the plaintiff's cotton which had been in a wooden building on the Chatahoochie river, and had been removed to Appalachicola. There could have been no difficulty in identifying it from the description as entered by the agent.

It is objected that the evidence shows other insurances on the same property not notified to the company in the report of the risk. These were all made by the same agent who made the insurance in question. He, therefore, knew of them at the time this risk was taken, which was notice to the company. In regard to the amount recovered, it is considerably less than the proof on the trial warranted, being only what was claimed in the proofs of loss and interest.

The defendant's counsel, upon the trial, excepted to the exclusion by the judge of an answer to the counsel's question to Rice, the secretary of the company, whether he would

have insured this cotton if he had known it was on the dock; such exclusion is now insisted upon as error, on the ground that the proof sought for would have tended to sustain the allegation of collusion between the plaintiff and McCoy.

I do not think there is any evidence in the case of such collusion, and clearly the evidence sought for by this question would not have proved it. There was no error in its exclusion.

The judge, also, excluded the answer of this witness to the question whether he supposed the alleged insurance was made by policy, to which defendant's counsel excepted. If the question of ratification of the act of the agent were in the case, this might have been a proper subject of inquiry, but in the view which we take of the case, it is entirely immaterial, and was properly excluded.

The same may be said in regard to the exclusion by the judge of proof that there was no practice of the company authorizing an agent, under such an appointment, to make a verbal insurance. Also, in regard to the refusal of the judge to allow the defendant to prove that the company never recognized any contract of insurance made by an agent except in the form of the printed policies.

Upon a careful review of the whole case, I am inclined to the opinion that no error was committed at the circuit, and that a new trial should be denied, and judgment rendered upon the verdict, with costs.

Motion denied.