John Smith, Respondent, *v.* James Mackin, Appellant.

(General Term, Fourth Department, June, 1871.)

Mistake of a material fact by one of the parties to a contract renders it voidable in equity, and an action lies for its rescission.

But it cannot, in general, be reformed, as in such case there is no mutual agreement.

The plaintiff occupied the defendant's lot for twenty years, mistaking it for adjoining premises, of which he had a deed ; the defendant, who owned contiguous property also, then brought ejectment for the lot, and the plaintiff, who supposed that there was a question as to an unimportant intrusion upon the boundary of the defendant's contiguous property only, agreed, in writing, to surrender the premises claimed, in consideration of a discontinuance, and afterward, having discovered his error, brought this action to rescind the agreement. — *Held*, that the action could be sustained.

*Held*, also, the plaintiff having, before suit, claimed to rescind the contract, and offered to reinstate the ejectment suit, the defendant refusing to consent, that a judgment, directing the rescission, and leaving the defendant, if so advised, to recommence his ejectment, was properly directed.

Where the complaint alleges mistake of facts, and demands the rescission of a contract for that reason, and the proof shows also the defendant's fraud, an amendment conforming the pleading to the facts proved is allowable under the Code (§ 173).

The plaintiff brought this action to obtain a decree directing the reformation or rescission of a contract, and for other and further relief.  The plaintiff's claim to relief was based upon allegations that he had, at the time of contracting, been mistaken as to certain material facts.  The action was referred, and the facts set forth in the complaint were substantially proved upon the trial.  It also appeared that the defendant, having knowledge of the plaintiff's misapprehension and mistake, had allowed him to contract without informing him that he was mistaken.  After the evidence had been given, and

before submitting the case, the referee, upon the plaintiff's application, and against the defendant's objection, allowed the plaintiff to amend his pleading by setting up the defendant's fraud.

It appeared, also, that, some time in 1843, the plaintiff had contracted to purchase a lot, in the village of West Oswego, thirty-four feet wide by 100 feet deep, described as subdivision lot No. 4 of Military Lot in that village, and that, under his contract, he had taken possession of an adjoining lot, known as subdivision lot No. 5, which had, in fact, been pointed out to him by the agent of his alienor as the premises described in the contract of sale, and that he had remained in the undisputed possession of lot five until in the year 1869, having, soon after the contract, received a deed of lot four, when the defendant brought ejectment against him to recover possession of it.

That, when the action of ejectment was pending between the parties, the plaintiff executed to the defendant the following agreement, viz. :

" For and in consideration of one dollar, and other good and valuable consideration, and in consideration of the discontinuing of a suit now pending in the Supreme Court by James Mackin against me for the possession of subdivision five of lot ninety-five, in the third ward, Oswego city, I do hereby agree to give up possession of said subdivision to said Mackin, and release all claims or title of every kind or nature I may have to the same.

" And I further agree that, as soon as the said Mackin procures a survey of said subdivision by a competent surveyor, that I will surrender to him all of said subdivision that I may occupy, excepting the barn and the land upon which the same stands, which latter I am to retain for the term of one year longer, but with the right to occupy the same for two years, if said Mackin does not sell or build on the same. And I further agree that I will move the fence now on said subdivision immediately on the completion of said survey, and erect it on the line dividing subdivisions four and five of said lot

ninety-five, reserving, however, the right to remove my crops from said subdivision five, when the same are ripe, this coming fall.

" The expense of said survey is to be divided equally between myself and said Mackin.

" And the said Mackin is not to make any claim for damages against me arising out of my occupying said lot heretofore, nor for occupying the barn as above.    Sept. 6, 1869.

" JOHN <sup>his</sup> × SMITH."
mark

That this agreement had been made upon suggestion of the defendant and his attorneys in the ejectment suit, and that the defendant, when he entered into it, still remained in ignorance of his mistaken occupation, believing that he occupied subdivision four described in his deed and contract, and supposing that, by his occupation thereof, he might have encroached somewhat upon the boundaries of lot No. 5, to which the defendant had a paper title ; that the plaintiff first learned his error, and the extent of the defendant's claim, after the survey provided for in the agreement between the defendant and himself had taken place, and when a certificate of the surveyor as to the facts was exhibited to him, and that, upon becoming satisfied of the facts, he had caused an offer to be made to the defendant to pay him all expenses incurred on account of such agreement, and to reinstate the action of ejectment precisely as it stood at the signing of the agreement, which agreement he requested the defendant to cancel, but that the defendant refused to cancel, and notified the plaintiff to surrender possession of the lot.

The referee held, that the plaintiff should have judgment declaring the contract void, and directing that it should be canceled and rescinded.   From the judgment entered on his decision, the defendant appealed.

C. T. Richardson, for the appellant.

J. A. Hathaway, for the respondent.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court— JOHNSON, J.   This is a clear case, upon the merits, for a rescission of the contract in question between the parties, and a judgment declaring it to be void and of no force or effect.   It is a plain case of a mistake of fact on the part of the plaintiff.   He had purchased of the owner of several lots sub-lot number four, and went into possession under his contract.   By mistake, the agent of his vendor pointed out sub-lot number five as the one he had purchased, and he went into possession, supposing it to be No. 4, paid the purchase-money and took his deed, built upon it and fenced it in, and made various other improvements thereon; and has occupied, claiming to be owner, and supposing he was owner, under his contract and deed, for over twenty-six years.   The defendant claimed sub-lot No. 5, and commenced an action of ejectment against the plaintiff to recover possession of said lot five.   The plaintiff, supposing and believing that the defendant's claim was only in respect to the boundary line between the two lots, and not doubting that he was on lot No. 4, of which he knew he had title, signed the agreement in question to settle the ejectment suit.   It turns out now that he had located on lot five, by mistake; and, if the agreement is allowed to stand, the plaintiff must lose his entire property, which he could otherwise have held against all the world.

It is one of the cardinal rules of equity, that an act done, or a contract made, under a mistake, or in ignorance of a material fact, is voidable and relievable in equity.   (Story's Eq., § 140.)   That the mistake here was in regard to a most material fact, cannot be denied.   The defendant knew how the fact was at the time the contract was made, and was also aware of the plaintiff's misapprehension in regard to it.   It is claimed that, inasmuch as there was no mistake on the part of the defendant, the plaintiff cannot have relief on that ground; that, to entitle a party to relief on that ground, the mistake must be mutual.   In cases where the relief sought was the

Smith *v.* Mackin.

reformation of the contract, it has been held, and the general rule undoubtedly is, that, to entitle a party to that species of relief, the mistake must be mutual. And there is good reason for this. The object of a reformation is to make the terms of the contract express what the parties intended it should express; in other words, to express the minds of the parties as they met upon the subject-matter. If the minds of the parties did not meet, and one understood the matter as expressed in the agreement, and the other differently, there can be no reformation, in the nature of things, because nothing was agreed upon in the minds of the parties. Their minds never met; and the court, instead of reforming a contract, would make a new one altogether, which both parties never intended to make, should it attempt to alter and reform in such a case.

But I understand the rule to be quite different when the relief sought is the rescission of the contract altogether. This goes upon the ground of relieving any party who has become bound by a contract which he never intended to make, and never would have made, but for a mistake he was laboring under in regard to a material fact. The rule is thus laid down in Adams' Equity, 171: "A mistake on one side may be a ground for rescinding a contract, or for refusing to enforce its specific performance; but it cannot be a ground for altering its terms." This is recognized as the true rule by WRIGHT, J., in his dissenting opinion in *Rider* v. *Powell* (28 N. Y., 310, 316). This distinction has been sometimes overlooked by courts in the application of the general rule, and some confusion and uncertainty thereby created. But it stands upon sound reason, and is inherent in the very nature of the different remedies. As there is no manner of doubt as to the plaintiff's mistake and the mistake of his attorney, nor that it was most material, the plaintiff is entitled to the relief granted on that ground alone.

But there is another ground on which the plaintiff's title to the relief is also clear, beyond any doubt or cavil. It is found, and upon sufficient evidence, that the defendant knew, at the

time he entered into the contract with the plaintiff, the mistake and misconception the plaintiff was acting under in regard to the location of sub-lot five, and was aware of the advantage the contract would give him over the plaintiff, in such an adjustment of the controversy between them. This was an undue and unconscionable advantage obtained by means in the nature of deceit and fraud, which equity will not allow the party thus obtaining it to retain. The parties were not dealing upon equal terms, as the defendant well knew; and good faith and fair dealing required that he should inform the plaintiff of his mistake. (*Gillespie* v. *Moon,* 2 Johns. Ch., 585; *Belknap* v. *Sealy,* 14 N. Y., 143; *Rider* v. *Powell,* 28 id., 310.) The plaintiff is an ignorant, unlettered man, unable to read either writing or print.

The decree should have restored the parties to the situation in which they stood when the contract was made, by reviving and reinstating the action of ejectment which had been discontinued, but for the fact that the plaintiff, before this action was commenced, had offered the defendant to do so if he would give up the contract, which offer the defendant refused. He is, therefore, properly left to commence a new action, at his election.

The amendment was properly allowed, under section 173 of the Code, to conform the pleadings to the facts proved. It did not change the nature of the plaintiff's claim, but left it as it was before. It only added a new fact in support of the claim, as made. The defendant was not deprived of any right or privilege by it, or taken by surprise. He refused to give any evidence under the amendment, although offered the opportunity, choosing to rest on his exception. (*Bedford* v. *Terhune,* 30 N. Y., 453.)

The amendment, as we have before seen, was not essential to the plaintiff's title to relief, and, had it been improperly allowed, could form no ground for the reversal of the judgment.

The evidence objected to was all properly received, in view of the purpose for which it was offered and used.

The judgment must, therefore, be affirmed, with costs.
·Judgment affirmed.