JOHN H. HICKS, as Receiver of the AMERICAN UNDERWRITERS' FIRE INSURANCE COMPANY OF MONROE COUNTY, Respondent, *v.* ARTHUR D. B. GRIMLEY, Appellant.

Contract — principal and agent — violation of instructions by insurance broker who procured and delivered policy of co-operative instead of old line company — attempted cancellation of such policy — when acceptance of such policy by principal makes him liable for assessment levied on policyholders.

Defendant employed an insurance broker to place fire insurance, *i. e.*, to select the companies, instructing him to select old line, not assessment companies.   The broker, acting as the agent of defendant, selected the companies, but departing from his instructions, procured and delivered a policy of a co-operative company.   The defendant took the policy, paid the premiums and for months had the protection of the insurance.   There was no suppression or misrepresentation by the broker of any of the terms of the policy and the policy itself disclosed that the company which issued it was a co-operative company and that it and its members were subject to the provisions of the Insurance Law.   After the policy had been in force for several months the defendant, at the request of the broker, and without seeking to have the policy rescinded, delivered the policy to the broker, who had it canceled and the unearned premium applied upon another policy issued to the defendant. Previous to this, however, the co-operative company had made an assessment upon its policy issued to and then held by defendant.   *Held*, that defendant cannot escape the liability assumed by the acceptance of the policy.

*Hicks* v. *Grimley*, 152 App. Div. 902, modified.

(Submitted November 25, 1914; decided January 12, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 16, 1912, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict directed by the court.

This action was brought to recover the amount of certain assessments, and penalties incurred for failure to pay assessments, upon a policy of insurance issued to defendant by the American Underwriters' Fire Insurance Company of Monroe county, a mutual company, of which the plaintiff is permanent receiver. The defendant defended the action upon the grounds that he never became a policyholder of the insurance company; that he was misled and deceived as to the nature of the policy issued to him; that he never accepted the policy, and that the policy had been surrendered to the insurance company and canceled. Upon the trial it appeared that in the fall of 1907 the defendant instructed one Nichols, an insurance agent, to place $1,000 fire insurance upon certain real property, stating that he did not wish to insure in an assessment company but desired to insure at a flat rate. The agent dividing the amount required procured two policies for $500 — in different companies — one of which, the policy in suit, he left at the defendant's place of business, who without reading the same placed it in his safe. A few months thereafter defendant at the request of the said agent returned such policy to him for cancellation and received another policy in its stead. The agent kept the policy until April 20, 1908, and then sent it to the company with a request that it be canceled. On March 12, 1908, the company, by resolution of its board of directors, levied an assessment against all of its policies then in force and defendant refusing to pay such assessment its receiver brought this action. Further facts are stated in the opinion.

*James O. Sebring* for appellant. The surrender and cancellation of the policy operated to terminate the

defendant's membership, if any, in the company. (*Standard Oil Co.* v. *Triumph Ins. Co.*, 3 Hun, 591; 64 N. Y. 85; *Train* v. *Holland Purchase Ins. Co.*, 68 N. Y. 208; *Schneider* v. *U. S. Life Ins. Co.*, 123 N. Y. 109; *Van Wien* v. *Scottish Union & Nat. Ins. Co.*, 118 N. Y. 94.) The defendant never in fact, upon the proof, became a member of the insurance company and liable to pay either assessment. (*Fire Ins. Co.* v. *Harwood*, 64 App. Div. 248; *Sands* v. *Hill*, 55 N. Y. 18; *Bank of Monongahela* v. *Weston*, 159 N. Y. 201; *Baptist Church* v. *Brooklyn Fire Ins. Co.*, 28 N. Y. 153; *Diver* v. *L. & L. Fire Ins. Co.*, 9 N. Y. S. R. 482; *Mead* v. *W. F. Ins. Co.*, 64 N. Y. 453; *Schmohl* v. *Fiddick*, 34 Ill. App. 190; *The Alberto*, 24 Fed. Rep. 379; *Goudling* v. *Hammond*, 42 Fed. Rep. 443; *Rowland* v. *N. Y., N. H. & H. R. Co.*, 61 Conn. 103; *Brandt* v. *Gallup*, 5 Ill. App. 262; *Fullerton* v. *Dalton*, 58 Barb. 236.) The insurance agent acted within the apparent scope of his authority in requesting and accepting the surrender of the policy and in canceling it and returning it to the insurance company. (*Train* v. *Hollis Ins. Co.*, 68 N. Y. 208; *C. P. T. Co.* v. *Ætna Ins. Co.*, 127 N. Y. 608.) The parol agreement made between the defendant and Nichols, the insurance agent that the policy to be issued to the defendant would be at a flat rate without assessments is binding and conclusive upon the receiver. (*International Ferry Co.* v. *American Fidelity Co.*, 207 N. Y. 350; *Wood* v. *American Fire Ins. Co.*, 149 N. Y. 382; *Carpenter* v. *G. A. Ins. Co.*, 135 N. Y. 298; *Kenyon Paper Co.* v. *Nederlandsche Lloyds*, 124 App. Div. 886; *Benjamin* v. *Palatine Ins. Co., Ltd.*, 80 App. Div. 260; 177 N. Y. 588; *Maher* v. *Hibernia Ins. Co.*, 67 N. Y. 283; *Devereux* v. *Sun Fire Office*, 51 Hun, 147; *Abel* v. *Phœnix Ins. Co.*, 47 App. Div. 81; *McClelland* v. *Mutual Life Ins. Co.*, 151 App. Div. 264; *Hay* v. *Star Fire Ins. Co.*, 77 N. Y. 235; *Bidwell* v. *Astor Mutual Ins. Co.*, 16 N. Y. 263.)

*Leonard T. Haight* and *John F. Nash* for respondent. No valid cancellation of a policy can be had in a co-operative fire insurance company without first having made a full settlement with the company and a payment by the insured of his share of the outstanding obligations of the company. (*Patrons of Industry Fire Ins. Co.* v. *Harwood*, 64 App. Div. 248.) The name and by-laws of the company indorsed legibly on the back of each policy, with a direct and prominent reference on the face of the policy to the by-laws on the back, acquainted each policyholder of his rights, benefits and obligations. (L. 1909, ch. 33, § 268; *Stone* v. *Penn Yan*, 197 N. Y. 285; *Van Loan* v. *F. M. F. Assn.*, 90 N. Y. 280.)

Miller, J. The defendant testified: "I gave Mr. Nichols part of the insurance." Nichols placed half of it with the American Underwriters' Fire Insurance Company of Monroe county and the other half with another company. Whilst Nichols solicted the business he did it as the ordinary insurance broker on his own account and not as the representative of a particular company. The defendant employed him to place the insurance, *i e.*, to select the companies, instructing him to select old line, not assessment companies. It is established then beyond dispute from the lips of the defendant himself that in selecting the companies Nichols acted as his agent and in making the selection departed from his instructions. The case involves the ordinary transaction between an insurance broker and his customer. The customer instructed the broker to place the insurance with old line companies; the broker, departing from his instructions, procured and delivered policies of co-operative companies. The customer took the policies, paid the premiums, and for months had the protection of the insurance. The question is whether he can escape the liability assumed on the acceptance of the policy on the ground that his agent departed from his instructions in selecting a co-operative

instead of an old line company to write the insurance. In my opinion an affirmative answer to that question will establish a dangerous rule.

It may be that Nichols represented the company in delivering the policy. But there is no claim of any misrepresentation as to the terms of the policy itself. The policy was the New York standard form of policy, precisely such a policy as would have been issued by an old line company. The defendant's liability to an assessment arose not from the terms of the policy but from the character of the company selected by Nichols and was imposed by section 268 of the Insurance Law (Laws of 1909, chapter 33). There was no suppression or misrepresentation by Nichols of any of the terms of the policy, and no such "inequitable, unfair or deceptive conduct" on his part as takes the place of positive fraud within the meaning of the cases cited by my brother Cuddeback. Nichols did not understand that the obligation of a member of a co-operative company was governed by said section of the Insurance Law. In that respect he made a mistake of law and that mistake of law led him to depart from his customer's instructions in the performance of an act done for the customer.

There was no failure of the minds of the contracting parties to meet. The defendant knew that he had accepted a policy from the American Underwriters' Fire Insurance Company of Monroe county. Even if he had in fact been ignorant of the name of the company, as I have no doubt frequently happens, he would have been chargeable with the knowledge of his agent. That company intended to issue a policy to the defendant. The policy was in terms precisely such a policy as the company intended to issue and the defendant intended to receive, namely, a standard policy insuring the defendant against loss by fire to an amount not exceeding $500.00 on the property described in consideration of the stipulated premium of $17.50. It was such a policy as the company was authorized to write.

Said section of the Insurance Law provides for the classification of the property or buildings insured and the issuance of policies "under different rates according to the risks from fire to which they may be subject," but it also provides that in case the amount of any loss or damage exceeds in amount the cash on hand, the directors or executive committee may borrow the money or "make an assessment upon all the property insured, *pro rata*, according to the classification or according to the amount insured, as may be provided in the by-laws sufficient to pay what the cash in hand falls short of paying, or for the whole loss or damages, as the directors or executive committee may decide to be for the best interests of the corporation." The by-laws of the company were printed on the back of the policy, and plainly disclosed that the company was a co-operative company and that it and its members were subject to the provisions of article IX of the Insurance Law. If the defendant mistook the character of the company his mistake was due either to his own carelessness or to the act of his own agent. Surely a party cannot avoid a contract on the ground that he was deceived by his own agent. The defendant may have supposed that the American Underwriters' Fire Insurance Company of Monroe County was an old line company, none the less he intended to accept a policy from that company. A misunderstanding as to the character of the company or a mistake of law as to the obligation imposed by statute on its members does not present a case of the failure of the minds of the parties to meet on the terms of the contract.

In the last analysis then the case involves simply a mistake of law made by the insured and his broker, not even as to the terms of the contract, but only as to the obligation imposed by statute on a party who accepts a policy from, and thus becomes a member of, a co-operative company. If that obligation may thus be avoided, the enforcement of it will always be involved in grave uncer-

tainty, with the resultant uncertainty in the ability of co-operative companies to meet their obligations.

The attempted cancellation of the policy was too late, and not sufficient, to avoid liability under the assessment. But it is significant as showing that even then the defendant did not seek to rescind the contract. Nichols, as his broker, not as the agent of the company, came to him and said that "he wanted that policy and he was going to cancel it, and he would give me [the defendant] another policy in place of it." The defendant delivered the policy to Nichols and "did not ask him the whys or wherefores." In other words, he did as he had done at the start, as many men do who have confidence in their brokers, he intrusted the business to the broker. But he did not ask to rescind the old contract. The unearned premium was computed and applied on another policy which was issued. Certainly in doing that business the broker did not represent the company which had issued the original policy.

The judgment should be affirmed, with costs.

CUDDEBACK, J. (dissenting). This action was brought to recover the amount of an assessment imposed on the defendant as the holder of a policy in a mutual insurance company.

The main defense is that the policy of insurance issued to the defendant was not accepted by him and never became a binding contract. At the trial the court directed a verdict against the defendant over plaintiff's request to go to the jury upon questions of fact. The Appellate Division has unanimously affirmed the judgment. The question in this court, therefore, is whether there was any evidence to sustain the defense interposed.

One John A. Nichols testified that in 1907 he went to the defendant and solicited the insurance upon the latter's icehouse. He was, he says, the agent at Hammondsport of the American Underwriters' Fire Insurance Com-

pany of Monroe County. What took place between Nichols and the defendant can best be stated in their own language. Nichols says:

"At the time I saw defendant about this insurance I had a conversation with him in regard to the kind of policy he was to have and as to the kind of insurance that I was writing. * * *. He wanted a policy without any assessment and he wanted it written at a flat rate. * * * I told him at that time that the American Underwriters' Fire Insurance Company did write a flat rate policy and I told him that I would write a flat rate policy for him and I did so."

The defendant testifies:

"I gave Mr. Nichols part of the insurance that is on the icehouse, providing it was not in an assessment company. I told him I did not want an assessment company and a straight line company, and he said he would and I said 'I know something about some trouble I have had in insurance companies before, and I want it in an old line company' and he wrote me out a policy and delivered it. He said he would give me a flat rate."

Nichols obtained from the defendant the information necessary to make out a policy, and on the same day, or a day or two after, wrote the policy in suit and forwarded to the company a report thereof signed by himself. The defendant made no written application for the insurance. The policy bore on its face the name of J. A. Nichols, Hammondsport, N. Y., and at the end a provision that it was not to be of force until countersigned by the agent at Hammondsport. It was so countersigned by Nichols, and he subsequently collected the premium from the defendant. The defendant received the policy and without reading it placed it in his desk.

The form of the policy was the New York standard, and it contained the statutory provisions relating to the assessment of policyholders in mutual companies. The defendant's contention is that he made no such contract

with the insurance company as is embodied in the policy. The defendant retained the policy for about six months, and until the insurance company imposed its first assessment, and then returned it to the company.

From the evidence taken the jury could have said that Nichols was the agent of the insurance company. His request to the defendant for the insurance on the ice-house, his power to countersign and deliver policies, the acceptance by the insurance company of his report, and this suit brought upon the policy issued, afford sufficient proof of agency. And this, notwithstanding the provision in the policy that "in any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company." (*Angell* v. *Hartford Fire Ins. Co.*, 59 N. Y. 171; *Devendorf* v. *Beardsley*, 23 Barb. 656; *Ellis* v. *Albany City Fire Ins. Co.*, 4 Lans. 433; *Andes Fire Ins. Co.* v. *Loehr*, 6 Daly, 105; *Whited* v. *Germania Fire Ins. Co.*, 76 N. Y. 415; *Wood* v. *American Fire Ins. Co.*, 149 N. Y. 382; *Stewart* v. *Union Mutual Life Ins. Co.*, 155 N. Y. 257.)

It was through the misrepresentation of Nichols, the insurance company's agent, that the defendant became a party to a contract contrary to his express stipulation. I think he is not bound thereby.

The insurance company, we may assume, intended to issue just such a policy as was delivered, but the defendant intended to accept just such a policy as Nichols represented he would issue. It was, therefore, a case where the minds of the parties did not meet in the contract. There was a mistake, either of law or fact, it makes no difference which, on the part of the defendant, as to what the policy provided, and he could rescind the contract because the mistake arose through the misrepresentation of the insurance company's agent, even though the agent acted in perfect good faith.

The law upon the subject has been stated by this court

as follows: "It is equally well settled that where there is a mistake of law on one side, and either positive fraud on the other, or inequitable, unfair and deceptive conduct, which tends to confirm the mistake and conceal the truth, it is the right and duty of a court of equity to award relief." (*Haviland* v. *Willets*, 141 N. Y. 35, 50; *Greene* v. *Smith*, 160 N. Y. 533.) It is said in Pomeroy's Equity Juris. (Vol. 2 [2d ed.], § 847) that the inequitable conduct referred to need not be intentionally misleading, "it is enough that the misconception of the law was the result of, or even aided or accompanied by incorrect or misleading statements or acts of the other party."

With regard to a mistake of fact made by one party to a contract the law is practically the same. (*Smith* v. *Mackin*, 4 Lans. 41; *Hammond* v. *Pennock*, 61 N. Y. 145, 152; *Carr* v. *National Bank & Loan Co.*, 167 N. Y. 375; *Daly* v. *Wise*, 132 N. Y. 306.) In *Hammond* v. *Pennock* the court says: "In equity, the right to relief (*i. e.*, to the rescission of a contract) is derived from the suppression or misrepresentation of a material fact, though there be no intent to defraud." The following is from *Smith* v. *Mackin :* "A mistake of a material fact by one of the parties to a contract renders it voidable in equity, and an action lies for its rescission."

In the case under consideration the plaintiff's entire cause of action and recovery rests upon the false representation made by Nichols, and the case comes clearly within the principle of the decisions cited.

The defendant is not precluded from questioning the validity of the policy on the ground that he negligently accepted the document without reading it. (*Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40.) He was misled by Nichols' misrepresentations and in addition the policy was long and its provisions obscure, as shown in *Skaneateles Paper Co.* v. *American Underwriters Fire Ins. Co.* (61 Misc. Rep. 457).

The conclusion is that the court erred in directing a

verdict for the plaintiff, and the judgment appealed from should be reversed.

My recommendation is that the judgment be reversed and a new trial granted, with costs to abide the event.

Willard Bartlett, Ch. J., Hiscock and Chase, JJ., concur with Miller, J.; Werner and Collin, JJ., concur with Cuddeback, J.

Judgment affirmed.