THE BROADWAY AND SEVENTH AVENUE RAILROAD
COMPANY, Respondent, v. THE MAYOR, ALDERMEN
AND COMMONALTY OF THE CITY OF NEW YORK,
Appellant.

*Use of snow plows by horse railroads in the streets of New York — subject to city
regulation notwithstanding the provisions of the charters of the railroad com-
panies — police powers, inalienable by the legislature — delegation of discretionary
powers to the mayor — terms imposed.*

In an action, brought by the plaintiff, a horse railroad company, in the city of
New York, to enjoin the defendant, the City of New York, from enforcing an
ordinance regulating the use of snow plows upon the plaintiff's railroad in
the public streets of that city, the plaintiff rested its claim upon the provisions
of section 4 of chapter 513 of the Laws of 1860, by which certain officers of
the city of New York are prohibited from permitting any railroad company,
claiming authority under the general railroad act, to construct any railroad in
or upon any or either of said streets or avenues upon which the tracks of the
plaintiff are laid, " and from doing any other act to hinder, delay or obstruct
the construction or operation of said railroad as herein authorized."

*Held,* that the decisions of the courts denying the rights of abutting owners, and
asserting absolute ownership on the part of the city, in the soil of those streets
in the city of New York in which the city has the fee, have been overthrown
by the recent decisions upon that subject, and the rights of abutting owners to
the free use and enjoyment of the streets is now recognized.

That the railroad had no right, in the exercise of the power conferred upon it by
its charter, to use the street in such a manner as that the rights of abutting
owners should be impaired, or so as to obstruct, impede and prevent the use of
other parts of the street than those occupied by their tracks.

That it did not follow, from the fact that the railroad company could not operate
its road without the removal of the snow from its tracks, that it had the right to
obstruct, with the snow removed by it, other parts of the street than those
occupied by its tracks.

That the necessity of removing the snow imposed the obligation to remove it from
its tracks and not put it upon other parts of the streets where it became an
obstruction to the use of the street by other persons using the same.

That even if the legislature had attempted to confer upon the railroad company
the rights claimed by it, such exercise of power would be unlawful, as the
police power of the State cannot be alienated, surrendered or abridged by the
legislature by any grant, contract or delegation whatsoever.

That by contract with the people of the State the owners of property abutting
upon the street bought certain rights which it is the duty of the State to protect,
and from its obligation so to do it cannot discharge itself.

That a claim on the part of a railroad company that in allowing the mayor to determine when the snow plows might be used, the common council had attempted to delegate to the mayor the power of regulation conferred upon that body by the city charter, and that consequently the ordinance was void, could not be sustained, as the use of the snow plows incumbered the street and deprived the abutting owners of access and egress and the general public of the use of the street alongside of the railroad tracks, and the common council had the right to prevent this abuse and to compel the railroad to cease interfering with the rights of abutting owners.

That, as they had the right to prohibit absolutely the use of these snow plows, they had also the right to order that such use should not be permitted unless the license was granted by the mayor.

That even if the ordinance in question was subject to criticism, as providing that the permission to use such snow plows or machines was to be determined by and to continue only during the pleasure of the mayor, and that thereby the mayor was to determine and be the sole judge as to the conditions under which the license should be granted, yet the mere fact that a single section of the ordinance was open to this criticism did not invalidate the whole, as in this case the clause in question was entirely separate and distinct from the rest of the ordinance which was perfect without it, definite in its terms and susceptible of enforcement.

That, as the corporation had the right to prohibit the use of these machines entirely, and they had prohibited them except upon certain terms as to the snow in the rest of the street being reduced to a level condition by the railroad company, the railroad could not maintain the position that the terms imposed were unreasonable, and that it was, therefore, entitled to disregard them, as if it thought the terms unreasonable it need not use the machines, and if it desired to exercise the privilege conferred by the ordinance, it must take the privilege upon the terms under which the privilege was offered to it

APPEAL by the defendant from an order granting an injunction *pendente lite*, enjoining the defendant from enforcing an ordinance regulating the use of snow plows in its streets.

*David J. Dean*, for the appellant.

*Elihu Root* and *S. B. Clark*, for the respondent.

VAN BRUNT, P. J. :

This action was brought by the plaintiff to enjoin the defendant from enforcing an ordinance which had been duly passed by the common council, regulating the use of snow plows in the public streets upon the plaintiff's railroad, and to restrain the defendant from doing any act to interfere with, hinder, delay or obstruct the plaintiff in the removal of snow from its railroad tracks, and a preliminary injunction having been granted therein an order was

made continuing the injunction, enjoining the defendant from enforcing the ordinance aforesaid.

The ground upon which the plaintiff seems to claim the unrestricted right to the use of a snow plow in clearing the snow from its railroad track, appears to be founded upon a claim of right to use the public streets for the conduct of its business in any manner which may be considered by it to be most suitable and most economical. The right of the plaintiff to maintain a street railroad in any of the streets of New York depends upon the charter granted to it by the legislature by chapter 513 of the Laws of 1860. The relevant parts of this charter, to which it is necessary to call attention, are as follows: By section 1 the assigns of the company are authorized " to lay, construct, operate and use a railroad with a double or single track, as hereinafter provided, and to convey passengers thereon for compensation through, upon and along the following streets and avenues, route or routes in the city of New York, etc., * * * together with the necessary connections, turn-outs and switches for the proper working and accommodation of the said railroad on the said route or routes."

By section 2 it is provided that such railroad " shall be constructed on the most approved plan for the construction of city railroads, and shall be run as often as the convenience of passengers may require, and shall be subject to such reasonable rules and regulations in respect thereto as the common council of the city of New York may, from time to time, by ordinance, prescribe."

By section 4 the mayor, common council, and the several officers of the city, are prohibited from permitting any railroad company, claiming authority under the general railroad act, to construct any railroad in or upon any or either of the said streets or avenues, " and from doing any other act to hinder, delay or obstruct the construction or operation of said railroad as herein authorized. And it is hereby made the duty of the said mayor, common council and other officers to do such acts, within their respective departments, as may be needful to promote the construction and protect the operation of said railroad as provided in this law. Any act or thing done in violation hereof shall be inoperative and void."

In construing the rights of the plaintiff in this action the Court of Appeals, in the decision of the case of *The People* v. *Kerr* (27

N. Y., 188), seems to have intimated, as far as it was necessary for the disposition of that case, that the city of New York was the absolute owner in fee of the soil of the streets which had been opened therein, and that the abutting owners upon such streets had no rights which the legislature was bound to respect, and that the legislature had the power to grant the absolute use of the whole or any part of a public street for the benefit of a private corporation engaged in the business of the transportation of passengers. This absolute denial of the rights of abutting owners, and assertion of absolute ownership upon the part of the city in the soil of these streets, has been completely overturned by the recent decisions relating to the subject and the rights of abutting owners to the free use and enjoyment of that which they have bought and paid for is now recognized, as is also the fact that the city, by the exercise of the right of eminent domain, has not taken an absolute fee in the streets, but only a qualified fee of a character sufficient to enable it to carry out the public uses, for the advancement of which the soil in the street had been condemned.

By these recent decisions, the obligations of the contract entered into between the people and the abutting owner, who has been assessed for the benefit arising from the opening of the new street, and who has paid therefor, are recognized ; and the further principle is enforced that, by the exercise of the right of eminent domain, no further property right can be acquired than is necessary for the enjoyment of the public use to which the property condemned is to be devoted.

By the charter of the city of New York, it is declared that the common council shall have the power to make such ordinances, not inconsistent with law and the Constitution of this State, and with such penalties in the matters and for the purposes following, in addition to the other powers elsewhere specially granted ; amongst others are specified the power to regulate the use of the streets, highways, railroads and public places, by foot-passengers, animals, vehicles, cars and locomotives, and to prevent encroachments upon and obstructions to the streets, highways, railroads and public places, and to regulate the cleaning of the streets, avenues, sidewalks and gutters, and remove ice and snow from them.

Among the duties which have been imposed upon the corporation of the city of New York by its organic law, is that of keeping its streets free and suitable for the passage of the public over each and every part thereof. The question, therefore, is presented upon the claim made by the plaintiff in this action as to whether the railroad company, in the exercise of the power conferred upon it, may use the street in such a manner as that the rights of abutting owners shall be ignored, and so as to obstruct and impede and prevent the use of other parts of the street, in keeping open their tracks for the purposes of passage. That they have no such right seems to be manifest, and the only ground which is advanced to support the claim, is the provision in the charter of the plaintiff that the railroad shall be run as often as the convenience of passengers may require; and that, therefore, the grant confers all rights over the street which are necessary to accomplish the purposes specified, or as the counsel puts it : The company has the right to the use of so much of the street for the purpose of maintaing and operating its road as, under all the circumstances, is necessary to accomplish the result of running the cars as often as the convenience of passengers may require, and that as it cannot operate the road without removing the snow from the track, therefore, by necessary implication, the grant carries with it the right to remove the snow from the tracks to the other parts of the street and allow it to remain there a reasonable time, just as in constructing or operating the road the grant of the franchise gives to the company the right to occupy so much of the street as may be necessary, temporarily, for the deposit of rails, string pieces, sleepers and earth from trenches.

The whole claim, therefore, is founded upon the duty which is imposed upon the plaintiff, because a privilege has been granted to it. In view of the fact that it has the right to use the public streets of New York for the running of its railroad, it has been required that it shall run its cars as often as the convenience of those for whom it was constructed should require. The claim, founded upon this duty, is that the plaintiff has a right to the use of the whole of the street, from curb to curb, at any time and under any circumstances which it may deem necessary, to carry out in the most economical way this requirement of its charter. It is at once apparent that no such claim can be sustained from this language

of the grant.   If the railroad company seeks to exercise such unusual powers, absolutely subversive of the rights of the public and of the abutting owners upon these streets, it is necessary to point to some more specific grant of power in its organic law than this requirement that it shall afford the greatest facilities possible, because of the privileges granted.

Conceding that it cannot operate the road without the removal of snow, how does the necessary implication follow that it has the right to obstruct every part of the street, except that occupied by its tracks ? Certainly the necessity of removing the snow imposes the obligation to remove it from its tracks and not put it upon other parts of the street where it becomes an obstruction to the use of the street by the other passersby.   As well might it claim that, by implication, as it is compelled to remove the snow, it has the right to temporarily deposit the same in any public square belonging to the city.   The company has no right to control or use or in any manner interfere with any part of the public street, except that actually included within its roadway.   It has the right to operate a double-track railway and nothing more, and no right to interfere with any part of the street not necessary for the construction and operation of that railway.   The duty is imposed upon the defendant to remove obstructions from the streets and to keep the streets in a condition for travel, and it is in the performance of this duty that they have attempted to regulate the use of these machines which pile up the snow upon both sides of the tracks, and prevent the use, either by the abutting owners or by the general public, of any other part of the street for the purpose of passage or access to their own premises.

It seems, therefore, clear that, as the grant which the plaintiff received from the city is to be construed most strictly against it, there is not a scintilla of authority, even if the legislature could grant such authority, which we do not admit, conveyed by its charter which, in any way, justifies the extreme claim presented in the case at bar.   As the law stands at present the authority which has been conferred upon the plaintiff is a mere license to use the streets of the city of New York for the operating of its railroad and the running of its cars, and that is permitted simply because such has been held to be consistent with the public use to which the streets have

been devoted. The extreme claim of rights and ownership absolute and independent of the rights of every other citizen, whether abutting owners or travelers, can no longer be sustained ; and this company, in the exercise of its rights, simply because it is more economical to do so, cannot be permitted to invade the rights of the defendant and of every abutting owner along the line of the railroad. Even if the legislature attempted to permit such an invasion of vested rights, they are powerless to effect the object.

In the case of *Thorpe* v. *Rutland and Burlington Railroad* (27 Vt. 149) it was held, and which has been referred to with approval by our Court of Appeals in the case of the *People ex rel. N. Y. Electric Lines Co.* v. *Squire* (107 N. Y., 593), that "the police power of the State extends to the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the State," and in the case in our Court of Appeals referred to it was held that "the right to exercise this power cannot be alienated, surrendered or abridged by the legislature by any grant, contract or delegation whatsoever, because it constitutes the exercise of governmental functions, without which it would become powerless to protect those rights which it was especially designed to accomplish."

By contract with the people of this State the abutting owners bought certain rights, and these rights it is, as above stated, the duty of the State to protect, and from this obligation it cannot discharge itself. In respect to the streets of New York, this police power has been conferred upon the corporation by the legislature, and it is the exercise of this power that is sought to be restrained in this action.

The imperative duty thus being cast upon the State to protect, and in the performance of that duty having conferred upon the corporation the powers necessary to effectuate its obligation, strong and unequivocal language, showing a change in the legislative method of performing its obligations, are absolutely essential before the corporation can be held to be deprived of its powers. No such legislation can be found, and the duty, therefore, rests upon the corporation to see to it that the rights of the individual and the public in the use of the public streets are protected.

The next question to be considered is, as to whether the ordinance

by which the city has attempted to regulate the use of the means of clearing the tracks by the railroad companies is valid or invalid. The main claim is that the power of regulation conferred upon the common council by the charter of the city cannot be delegated to the mayor, as is attempted to be done by the ordinance in question. It is not necessary to cite authorities for the purpose of showing that the corporation has no power to delegate any of its legislative functions, and so far as there is any delegation to the mayor in the ordinance in question of any legislative function, such ordinance may be void, but so far as the ordinance is within the powers of the common council it is valid.

The common council, as has been seen, has the right to regulate the use of the streets, highways, railroads and public places by foot-passengers, animals, cars and locomotives, and they have, therefore, the right to prohibit the use of the streets in any way which shall appear to be an obstruction to the general public, or a detriment to the abutting owners. The use of the snow plows, without question, incumbers the balance of the street, deprives the abutting owners of access and egress, and the general public of the use of the street alongside of the roadways. The common council have the right to prevent this abuse and to compel the railroad companies to cease interfering with the rights of the abutting owners, especially when they exercise a right, no authority for which can be found in their organic law. The common council, therefore, had the right to prohibit the use of these snow plows and sweeping machines, and they had also the right to order that such use should not be permitted unless a license was granted by the mayor so to do. So far there is no delegation of authority, but this is merely a regulation of the use over which they had complete control.

But it is said that a subsequent section of the ordinance goes further than this, and provides that the permission to use such snow plows or machines was to be determined by and continue only during the pleasure of the mayor, and that thereby the mayor is to determine and be the sole judge as to what way and how the license shall be granted. It may be true that this part of the ordinance is subject to the criticism passed upon it, but the balance remains in force.

The mere fact that a single section of an ordinance of this description is obnoxious to criticism in no way invalidates the whole,

unless it is so intertwined and interwoven with it that it cannot be separated therefrom.

The clause in question is entirely separate and distinct. The ordinance is perfect without it, is definite in its terms and susceptible of enforcement. It would, therefore, seem to be a valid exercise of the power which it vested in the common council.

It is claimed, however, that the requirement, as a condition precedent to the obtaining of a permit to use snow plows and sweeping machines, that the railroad company will not only remove the snow thrown up by such plow or machine, but also reduce the snow upon the highway adjacent to the tracks to such level as will make convenient for all vehicles the approach to the sidewalk, and make the whole width of the road safe for travel within twenty-four hours, is an unreasonable requirement, and, therefore, the common council have no power to make the same. The construction of this ordinance must necessarily depend upon the circumstances attending the case. The fact that these sweeping machines and snow plows pile up snow upon the side of the tracks is well established by the evidence which is contained in the papers before the court. In the construction of this ordinance it would be impossible for the court to shut its eyes to what is seen in the public streets after every fall of snow, and it is the regulation of this abuse which is aimed at by the requirement of the ordinance, and when the railroad companies have removed the snow which they have cast upon the side of the street, this requirement will be fulfilled. It is impossible (and impossibilities are never required), for the corporation to determine whether each particular atom of snow has been placed upon the side of the street, off the tracks, or whether it naturally fell upon the side of the street, and, therefore, they have adopted the general regulation, that they shall reduce the snow to such a level as will make it convenient for all vehicles to approach the curb-stone.

But there is a further answer to this proposition. It has already been stated that the corporation have the right to prohibit the use of these machines, because of the effect of their operation, and they have prohibited them except upon certain terms. If the railroad companies think the terms unreasonable, they need not use the machines.

They have no absolute right to their use, and if they desire a

privilege, they must take the privilege upon the terms which are offered to them. Simply because they must operate their road, and run cars as often as the convenience of passengers may require, gives them no absolute right to carry out this power in any manner in which they see fit. The obligation must be fufilled, having due regard to the rights of others, and simply for the reason that snow can be removed from the tracks more economically by the use of snow plows, gives them no right to the use of such instruments invading, as they do, the contract rights of others.

The order should be reversed, with ten dollars costs and disbursements, and the preliminary injunction vacated.

BRADY and DANIELS, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and preliminary injunction vacated.