(111 App. Div. 870)

### FLYNN v. SMITH.

(Supreme Court, Appellate Division, First Department. March 16, 1906.)

1. TROVER AND CONVERSION—ACTION—EVIDENCE.

Certain stock was pledged with stockbrokers as collateral to a customer's margin account, but did not so appear on the stockbrokers' books. After their failure their assignee scheduled the brokers' claim against the customer as worthless, and later, not knowing that it was secured by the stock, sold the claim for a nominal sum to plaintiff's assignor. In a suit against the stockbroker's assignee for alleged conversion of the stock, he claimed that plaintiff's assignor, in purchasing the claim, was merely acting for the customer. *Held*, that it was error for the court to exclude evidence that defendant, when he assigned the the claim, had no knowledge that it was secured by the stock, and to refuse to permit plaintiff's assignor to answer how he came to purchase the account.

2. ASSIGNMENTS—SECURED CLAIMS—MEETING OF MINDS.·

Where, at the time a claim, thought to be worthless, was assigned for $10, it was in fact secured by certain stock worth $1,120, and it appeared that neither party to the assignment had knowledge of such security, there was no meeting of minds, and the assignment was subject to rescission.

3. PLEADING—MOTION FOR JUDGMENT—EXCEPTIONS—WAIVER.

Where, after the denial of a motion for judgment on a counterclaim for want of a reply, defendant did not rest on his exception, but offered proof of the facts, he was not entitled to rely on such exception on appeal.

Appeal from Trial Term, New York County.

Action by John J. Flynn against Frank S. Smith. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

George Coggill, for appellant.

Charles De Hart Brower, for respondent.

LAUGHLIN, J. This is an action for the conversion of 10 shares of the capital stock of the Crocker Wheeler Electric Company. One Alfred W. Law owned the stock and had pledged the same to Henry Marquand & Co., stockbrokers, as collateral security to his account as their customer speculating in stocks on margins. The brokers made a general assignment for the benefit of creditors to the defendant. Their books showed that Law was indebted to them in the sum of $4,120.23. The defendant as such assignee duly advertised and sold the claim at public auction. It was purchased for $10 by one Hunter, a lawyer, and the next day the defendant executed and delivered to him an assignment thereof, with a statement of the account annexed, assigning all defendant's "right, title, and interest in and to any and all sum or sums of money now due, or to grow due, upon the annexed account, which said account was duly assigned to me·by the firm of Henry Marquand & Company." The stock came into the possession of defendant as assignee, but the books did not show, and he was not aware, that it was held as collateral to Law's account until seven days after the sale, when Hunter demanded it upon the ground that it passed to him as incidental to the account. The defendant declined to deliver it and offered to return the $10 purchase price of the account, which was refused. Neither the account itself nor the advertisement or assignment thereof contained any reference to this stock or indication that any security had been put up or held as margin. Within two months after the sale of the account the defendant sold the stock for $1,120, which apparently was its fair market value then and also at the time of the sale of the account. Hunter subsequently assigned to plaintiff the claim against Law on the account, all his right to the stock, and his claim against defendant for refusing to deliver it.

The defendant set up as a separate defense, and as a counterclaim, that he did not know that this or any stock was held as margin to Law's account; that he did not intend to sell the stock with the account or to execute any assignment thereof to him; that the sale and assignment

were made under the misapprehension that there was no margin to se-
cure Law's claim; that Hunter was acting for Law in purchasing the
account, and he demanded the rescission of the sale and cancellation of
the assignment upon his restoring the consideration. The defendant
testified to these facts, and they are not expressly contradicted. He
further showed that in the inventory and schedule filed by him as as-
signee he described this claim against Law as an account receivable,
$4,120.42, of "no value," and "uncollectible," and he included this stock
in a schedule of securities found in the safe deposit vault, which, on
information derived from clerks of his assignor, he inventoried as "be-
lieved to be lodged by clients for safekeeping, and to which the as-
signors had no claim by way of title or lien, and consequently un-
appraised." There was no reference to this stock on the ledger con-
taining Law's account. The only reference in the books of the as-
signors to the stock was in the register of securities in the cashier's safe,
which indicated that they belonged to Law; and this was referred to in
a note to the schedule in which they were inventoried without having
been appraised. According to the testimony of Law, Hunter did not
know until after the sale that the account was secured by this stock; and
on objection interposed by counsel for plaintiff the court excluded
Hunter's testimony on this point, upon the ground that it was imma-
terial whether or not Hunter knew what he was purchasing.

The court also sustained an objection to a question put to Hunter
by counsel for defendant inquiring how he came to buy the account, and
defendant took an exception. Those rulings were manifestly erron-
eous. It clearly appeared that the defendant did not intend to sell any
right or interest in the stock; and, if this evidence had been received,
it might have conclusively appeared that Hunter did not intend to buy
any right or interest therein. Brown v. Lanphear, 35 Vt. 252. This
evidence, with that already in, might have shown a mutual mistake con-
cerning a material fact, which would have required a rescission at the
instance of the party prejudiced. It is true that the collateral goes with
the debt, and the owner of the debt holds it as trustee for the debtor,
and therefore it passes as incidental to a sale of the debt, and yet it is
usually, and especially in this case, a very important incident, many
times more important than the debt itself. Knowledge of it, therefore,
cannot be immaterial. If, on the other hand, Hunter knew that the
stock was pledged as collateral to the account, he must have learned it
from Law, with whom he occupied offices and for whom he was acting
in part without a definite arrangement as to their respective interests.
Law knew all the facts, including the value of the stock, and undoubted-
ly knew that the defendant had scheduled the account as worthless
and the stock as merely held on deposit; and, if Hunter knew these
facts, as is quite likely, he was under a duty to disclose them to the
defendant, who was acting in a trust capacity, and was not, owing to
the condition of the books, chargeable with negligence.

However, the action is not defended on that theory, and there are
other grounds upon which this unjust judgment may be reversed. The
defendant knew that he was selling the account which he had inven-
toried as valueless and which brought $10; but he had no knowledge as
to the existence of the stock as collateral, and he did not intend to sell

for $10 a secured debt worth more than 100 times that sum. Nothing was done to lead the plaintiff's assignor to believe that he was to receive the collateral, and he could only have known of the existence thereof through Law. The defendant could not have intended to part with any interest in the securities, since he did not know that he held them as collateral. If, as already observed, plaintiff's assignor was equally unaware of the fact that the stock was held as security, he could not have intended to purchase the right to the security. In these circumstances, even if the form of the sale would in law carry the securities to the plaintiff, it is clearly a case for rescission on the ground that the minds of the parties never met as to the p· ɔperty and property rights.

Moreover, the defendant merely asks a rescissi n of the contract, not a reformation. He does not ask to retain the pι ιrchase ɔrice and have the contract so amended as to except the stock. He offcιs to return the consideration and to restore the plaintiff's assignor to his former position and asks like restoration for himself. In such case relief may be had, not only on the ground of fraud or mutual mistake, but also upon the ground that, owing to lack of knowledge of a material fact by the party seeking the relief, without negligence on his part, the minds of the parties never met with respect to the property or property interests transferred or even the consideration therefor. Smith v. Mackin, 4 Lans. 41; Bedell v. Bedell, 37 Hun, 419; Crc ʌve v. Lewin, 95 N. Y. 423; Duncan v. N. Y. Mutual Ins. Co., 138 N. Y. 88, 33 N. E. 730, 20 L. R. A. 386; Moffett Co. v. City of Rochestȩ (C. C.) 82 Fed. 255; Id., 178 U. S. 373, 20 Sup. Ct. 957, 44 L. Ed. 1108; Harris v. Pepperell, L. R. 5 Eq. 1; Werner v. Rawson, 89 Ga. 619, 15 S. E. 813; Diman v. Providence, W. & B. R. Co., 5 R. I. 130; Am. & Eng. Enc. of Law, vol. 24, p. 618. The facts of the case at bar fairly bring it within this rule of law.

No reply was served to defendant's counterclaim for rescission. The counterclaim was good. The facts pleaded constituted not only a defense to the action for conversion, but ground for affirmative relief to have the sale of the account rescinded. At the commencement of the trial the defendant moved for judgment on the counterclaim, which was denied, and he excepted. We think this was error also; but since defendant did not rest on his exception, but offered proof of the facts, we think that we should not direct final judgment on the counterclaim.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

O'BRIEN, P. J., and INGRAHAM, J., concur. McLAUGHLIN and HOUGHTON, JJ., concur in result.