(140 App. Div. 358.)

CITY OF NEW YORK v. DOWD LUMBER CO. et al.

(Supreme Court, Appellate Division, First Department. November 4, 1910.)

1. MUNICIPAL CORPORATIONS (§ 254*)—CONTRACTS—BREACH—EXCUSE—MISTAKE.

Where a bidder for municipal supplies inadvertently made an error in extending the items, so that the amount of the bid, as stated, was only one-tenth of that intended, it was not necessary to bring an independent action for rescission; but the facts could be pleaded as a defense in an action by the city to recover the difference between the amount of the bid and the amount which the city was obliged to pay elsewhere on the bidder's refusal to execute a contract at the figure given in the bid.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 254.*]

2. MUNICIPAL CORPORATIONS (§ 254*)—CONTRACTS—RESCISSION—MISTAKE.

Where a bidder on a municipal contract inadvertently made an error in footing up items, so that the amount of his bid was one-tenth of the amount intended, which error was patent upon the face of the bid itself, the bidder will be relieved from liability for damages for breach of an agreement contained in the bid to carry out a contract upon the terms stated in the bid.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 254.*]

Appeal from Trial Term, New York County.

Action by the City of New York against the Dowd Lumber Company and others. From a judgment for defendants, and an order denying a new trial, plaintiff appeals. Affirmed.

See, also, 120 N. Y. Supp. 370.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Terence Farley, for appellant.

Moses Jaffe, for respondents.

SCOTT, J. Plaintiff appeals from a judgment in favor of defendants, entered upon a verdict, and from an order denying a motion for a new trial.

Plaintiff accepted a bid made by the defendant Dowd Lumber Company for the furnishing of certain supplies. The lumber company, for the reasons hereinafter stated, refused to execute a contract, whereupon the plaintiff purchased the supplies elsewhere at a higher price than that bidden by the Dowd Lumber Company. This action is to recover the difference between the amount of the Dowd Lumber Company's bid and the amount which the city was obliged to pay for the supplies. There is practically no dispute as to the facts, although there was a fair question for the jury as to some of the inferences to be drawn from such facts.

In May, 1907, the city of New York, by its department of docks and ferries, advertised for bids:

"For furnishing all the labor and materials required for furnishing miscellaneous supplies."

Five classes of supplies were designated, but the present action relates only to those embraced in class III. It was stipulated in the advertisement as follows:

"The bidder will state the price of each item or article contained in the specifications or schedules herein contained or hereto annexed, per pound, ton, dozen, gallon, yard, or other unit of measure. The extensions must be made and footed up, as the bids will be read from the total for each class, and awards made to the lowest bidder in each class."

The bid or estimate contained an agreement on the part of the bidder to deliver the supplies at the prices indicated, if the contract should be awarded to it, and also an agreement to the effect that if its bid should be accepted, and it refused to execute a contract, it would pay the difference between its bid and the amount the city might be obliged to pay to another for the supplies so bidden for. The bids were opened on May 20, 1907, and the defendant Dowd Lumber Company appeared to be the lowest bidder for the supplies comprising class III, and on May 21st that company was notified by the department of docks and ferries that its bid for the supplies embraced in said class III was accepted.

The bid made by the defendant Dowd Lumber Company included a bid for the whole of class III at the sum of $10,776.50, and also a detailed statement of the units of materials bidden upon, with the price per each unit. From these units and prices extensions were carried out, and the sum of these extensions, being footed up, made the aggregate price bidden for the class. On the face of the bid thus made up it was apparent that errors had been made, as to five items, in carrying out the extensions of the result of multiplying the number

of units by the price per unit; the error consisting in each case in omitting the last figure of the result, so that an extension, which upon the face of the bid should have read a certain sum, did in fact read but one-tenth of that sum. A single instance, typical of all five errors, will illustrate. One of the items bidden for was 3,000 pieces of spruce lumber of a certain size. The item as it appeared on the bid was:

3,000 pieces, 1½ by 9, spruce, at 35¢ per piece..................... $105.00

—whereas a correct extension would have made $1,050. The result of these errors was that the total bids for the five items, as extended, amounted to $543; whereas, if the extensions had been correctly carried out, the total bids for these items would have been $5,430. These errors were noted by the assistant secretary of the department of docks and ferries immediately after the opening of the bids, and before the contract for class III was awarded to the defendant company. The lumber company, having had its attention called to the error, promptly notified the department thereof, and asked to be relieved from its bid. The department refused to so relieve it, and proceeded to purchase the supplies elsewhere.

The present action is against the lumber company, and its sureties, to recover the difference between its bid and the price at which the lumber was afterwards bought. This case came here before upon an appeal from a dismissal of the complaint at the close of the plaintiff's case. That judgment was reversed because, while the erroneous extensions were patent, there was nothing to show how these extensions came to be thus made, and whether or not they were the result of an honest mistake, or were intentionally made with a view to obtaining some advantage in the bidding. 135 App. Div. 244, 120 N. Y. Supp. 370. Upon the present trial these questions were fairly presented to the jury, who have found, by their verdict, that the errors were inadvertently and unintentionally made by the bookkeeper of the lumber company in consequence of the haste in which he was obliged to prepare the bid, and that there was no intention of misleading the city or any bidder. In short, the finding is, and it is well supported by the evidence, that the mistake was an honest one. Under these circumstances, we think that the judgment was right, and should be upheld.

This action, in substance, is one to recover damages from the lumber company for the breach of the agreement, contained in its bid, to execute and carry out a contract upon the terms stated in the bid. The answer of the company is, in effect, that it never consciously or intentionally entered into such an agreement; its apparent agreement being the result of an honest mistake in transcribing the bid. Therefore it says it would be unconscionable to hold it in damages. This is not an action to reform a written contract, wherein it is usually necessary to show mutual mistake, or mistake on one part and fraud on the other. It is a demand that that which, on its face, appears to be a contract shall be held to be no contract at all. It was not necessary to bring an independent action for the rescission of the contract. It was sufficient to state the facts as a defense. Born v. Schrenkeisen,

110 N. Y. 55, 17 N. E. 339. There are numerous cases to be found in the books wherein the courts have relieved parties from the consequences of mistakes similar to those proven in this case. A notable one is Moffett v. Rochester, 178 U. S. 373, 20 Sup. Ct. 957, 44 L. Ed. 1108, where the plaintiff had made a mistake in its bid, which, however, was not patent upon the face of the bid itself. In, the course of its opinion the court remarked that, where there is a mistake on one side only, it may be a ground for rescinding a contract, but not for reforming it; for, where the minds of the parties have not met, there is no contract, and therefore nothing to be reformed. To the same effect are Hyde v. Tanner, 1 Barb. 75; Smith v. Mackin, 4 Lans. 41; Flynn v. Smith, 111 App. Div. 873, 874, 98 N. Y. Supp. 56. The rule in such cases was well stated by Lamar, J., in Singer v. Grand Rapids Match Co., 117 Ga. 86, 43 S. E. 755, as follows:

"A slip of the pen or a slip of the tongue ought not to be treated as a deliberate contract, unless the other party acted thereon to his injury. But if by reason of ambiguity in the terms of the contract, or some. peculiar circumstances attending the transaction, it appears that one of the parties has, without gross fault or laches on his part, made a mistake, that this mistake was known, or ought to have been known, to the opposite party, and that the mistake can be relieved against without injustice, the court will afford relief, either by refusing specific performance, by cancellation, or by refusing to give damages. Where the mistake is patent, where the opposite party knew or should have known of it, no contract is made. The minds of the parties have not met, and they will be left where the mistake placed them."

In our opinion, the facts of this case, as found by the jury, fully justify the judgment and order, which are accordingly affirmed, with costs. All concur.