## CITY OF NEW YORK v. SEELY-TAYLOR CO. et al.

(Supreme Court, Appellate Division, First Department. February 16, 1912.)

1. MUNICIPAL CORPORATIONS (§ 335*)—PUBLIC WORKS—CONTRACTS—BID—
   WITHDRAWAL.

   Where a bidder for public works made an unintentional mistake in his bid, it was entitled to withdraw the same before it was acted on, and be relieved in equity from executing the contract based thereon.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 335.*]

2. MUNICIPAL CORPORATIONS (§ 337*)—PUBLIC WORKS—CONTRACT—BIDS—
   FAILURE TO PERFORM—DAMAGES.

   Greater New York Charter (Laws 1901, c. 466) § 420, provides that, if a bidder whose bid has been accepted shall refuse or neglect within five days after notice that the contract has been awarded to execute the same, or to furnish the required bond, the bidder's deposit shall be forfeited as liquidated damages. Held that, where a bidder for public works deposited a certified check for 5 per cent. of the required bond and also a surety company's bond for performance of the contract if awarded to the bidder, and for payment to the city of the difference between the bid and any subsequent contract entered into by the city on failure of the principal to enter into a contract, and the bidder refused to enter into the contract, the city was limited to a recovery of the forfeited deposit, and could not recover on the bond the difference between the bid and the amount the city was required to pay for the work after readvertisement.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 865; Dec. Dig. § 337.*]

3. MUNICIPAL CORPORATIONS (§ 347*)—PUBLIC IMPROVEMENTS—BIDS—FAIL-
   URE TO PERFORM—LIABILITY OF SURETY.

   Where a bidder for public works deposited a certified check as a guaranty that it would enter into a contract, and also a bond for performance of the contract, in case it was let to it, or for payment of the difference between the bid and any subsequent contract let by the city on failure of the bidder to enter into the contract, but later withdrew the bid because of mistake and refused to enter into a contract, after which the check was returned, the city could not recover the amount of the check in a subsequent action against the contractor and its surety on the bond to recover the difference between the bid and the amount the city was compelled to pay for the work on readvertisement.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 876; Dec. Dig. § 347.*]

4. MUNICIPAL CORPORATIONS (§ 347*)—CONTRACTOR'S BOND—DISCHARGE OF
   SURETY—LIQUIDATED DAMAGES—PAYMENT.

   Damages to a city sustained by a bidder's refusal to enter into a contract for the performance of the work on his bid being accepted having been liquidated at the amount of a deposit required to be filed with the bid by Greater New York Charter (Laws 1901, c. 466) § 420, such deposit having been made by the bidder, the sureties on the bidder's bond given to secure the making of the contract on acceptance of the bid were thereby discharged.

   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 347.*]

5. PRINCIPAL AND SURETY (§ 31*)—SURETY'S LIABILITY—CONSIDERATION.

   A surety's agreement to pay any sum for which his principal is not liable is without consideration.

   [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 63; Dec. Dig. § 31.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. EVIDENCE (§ 32*)—JUDICIAL NOTICE—CITY ORDINANCE.
    The court cannot judicially notice a city ordinance.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 42; Dec. Dig. § 32.*]

7. MUNICIPAL CORPORATIONS (§ 333*)—PUBLIC WORKS—BIDDERS—DEPOSIT OF BOND—VALIDITY OF ORDINANCE.
    Under Greater New York Charter (Laws 1901, c. 466) § 420, limiting the damages to the city for a bidder's refusal to perform his bid for public works to the amount of the deposit made with the bid under such section, Revised Ordinances, § 349, providing that the bidder shall deposit a bond conditioned that he will comply with his bid, being inconsistent with the charter, was invalid.
    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 333.*]

8. COSTS (§ 164*)—EXTRA ALLOWANCE.
    Where the trial of an action was not a long one, and there were no difficult questions of law involved, the case was neither difficult nor extraordinary, so as to authorize an extra allowance of costs.
    [Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 620-636; Dec. Dig. § 164.*]

    Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by the City of New York against the Seely-Taylor Company and the Empire State Surety Company. From a judgment dismissing the complaint at the close of the evidence, plaintiff appeals, and from an order denying defendant Seely-Taylor Company's motion for an extra allowance of costs it appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, McLAUGHLIN, and SCOTT, JJ.

Terence Farley, for appellant City of New York.
Edward W. Norris, for appellant Seely-Taylor Co.
Benjamin Reass, for respondent Empire State Surety Co.

McLAUGHLIN, J. The plaintiff, acting through its commissioner of docks, on or about the 1st of March, 1905, advertised for proposals or estimates for performing labor and furnishing materials required for removing a ferry structure and building in place thereof a new one. The advertisement notified prospective bidders that sealed proposals or estimates would be received by the commissioner of docks until 2 o'clock p. m. March 13, 1905, and that security would be required in the sum of $90,000; that each bid or estimate "shall be accompanied by the consent in writing * * * of a guaranty or surety company duly authorized by law to act as surety and shall contain the matters set forth in the blank forms mentioned below"; and that no bid or estimate would be considered, unless, as a condition precedent to the reception or consideration of any proposal, it was accompanied by a certified check upon one of the state or national banks of the city of New York, drawn to the order of the Comptroller, or money to the amount of 5 per cent. of the amount of the bond required as provided in section 420 of the Greater New York charter (Laws 1901, c. 466). In answer to the advertisement, the

defendant Seely-Taylor Company ·submitted· a bid, accompanying which was a bond executed in the form required by the respondent surety company. This bond recited that in consideration of $1 paid by the city, the receipt of which was acknowledged, the surety company agreed, if a contract were ·awarded to the Seely-Taylor Company, it would become bound as its surety for the faithful performance of the same; and "if the said person or persons shall omit or refuse to execute such contract and give the proper security within five days after written notice that the same is ready for execution, if so awarded, we will pay, without proof of notice or demand to the said, the city of New York, or its successors, any difference between the sum to which such person or persons would be entitled upon the completion of such contract and the sum which the city of New York may be obliged to pay to the person or persons to whom the contract shall be awarded at any subsequent letting."

At the time the bid and bond were submitted and accompanying the same, the Seely-Taylor Company delivered a certified check drawn on a National Bank of the city of New York, payable to the order of the comptroller, for $4,500. There were several other bidders, and, when all of the proposals were opened, it was found that ·the Seely-Taylor Company's bid was the lowest by upwards of $100,000. On the 14th of March, the day following when the bids were opened, the Seely-Taylor Company notified the commissioner of docks and the comptroller of the city, in writing, that it withdrew its bid. On the following day the commissioner of docks acknowledged, in writing, the receipt of the notice, and at the same time notified the Seely-Taylor Company that it had no right to withdraw its bid, and "that, if the contract be hereafter awarded to you, the department will look· to you and to your surety to carry out the terms of your bid and· to execute the contract accordingly." Some time thereafter the contract was awarded to the Seely-Taylor Company, which it refused to execute, though requested to do so. The city then readvertised for bids, and subsequently let a contract to the lowest bidder on such readvertisement, which was about $144,000 in excess of the bid made by the Seely-Taylor Company. Some two years thereafter this action was brought to recover this difference from the Seely-Taylor Company and its surety, the city in the meantime having, on demand of the Seely-Taylor Company, returned to it the check for $4,500.

There was no dispute at the trial between the parties as to the facts above, stated, and, in addition thereto, it appeared from the testimony of the president of the Seely-Taylor Company, which was uncontradicted, that he submitted the bid for his company and in doing so made an unintentional error of $93,000; that this error occurred in transferring figures from a paper upon which he had made his estimate to the formal bid; that on the formal bid he put down the amount as $10,000, and it should have been $103,000; that the error was discovered the morning after the bids were opened, when he immediately communicated with the commissioner of docks, and at the same time gave notice that the Seely-Taylor Company withdrew its bid. At the conclusion of the evidence, and after both parties had rested, the trial court dismissed the complaint. The city appeals from

the judgment to that effect and the Seely-Taylor Company appeals from an order denying its motion for an extra allowance of costs.

[1] If it be true, as testified by the president of the Seely-Taylor Company, that it made an unintentional mistake of $93,000 in its bid, then undoubtedly, before the bid was acted upon, it could be withdrawn, and the court in equity could relieve it from executing a contract which it never intended to make. Moffet v. City of Rochester, 178 U. S. 375, 20 Sup. Ct. 957, 44 L. Ed. 1108; City of New York v. Dowd Lumber Co., 140 App. Div. 358, 125 N. Y. Supp. 394. The conclusion at which I have arrived, however, renders it unnecessary to consider whether such a defense were pleaded, or, if so, whether the testimony of the president of the Seely-Taylor Company bearing on that subject should have been submitted to the jury.

[2] When the Seely-Taylor Company made its bid, it complied with section 420 of the Greater New York charter by delivering a check as therein required. This section of the charter provides, among other things, that:

"If the said bidder, whose bid has been accepted, shall refuse or neglect within five days after due notice that the contract has been awarded, to execute the same, or to furnish the required bond, the amount of deposit made by him shall be forfeited to and retained by the said city as liquidated damages for such neglect or refusal and shall be paid into the sinking fund of the city. * * * "

If it be assumed that the Seely-Taylor Company's bid were a valid and binding one, notwithstanding the mistake alleged, it could thereafter refuse to enter into a contract, and, if it did so, the only damage to which it was subjected was that provided in the section of the charter referred to. Its refusal forfeited to the city the amount of the deposit as "liquidated damages." Where a statute provides for liquidated damages, or where there is a stipulation in a contract as to the amount of damages that is to be paid to either party for a breach, then, in the absence of fraud or mistake, the only question which arises is as to the breach. In that case the actual damage is not involved. One cannot recover both. The recovery of one precludes the recovery of the other. Cotheal v. Talmage, 9 N. Y. 551, 61 Am. Dec. 716; Darrow v. Cornell, 12 App. Div. 604, 42 N. Y. Supp. 1081; Dunn v. Morganthau, 73 App. Div. 147, 76 N. Y. Supp. 827, affirmed 175 N. Y. 518, 67 N. E. 1081; Shiell v. M'Nitt, 9 Paige, 101; Wood v. Niagara Falls Paper Co., 121 Fed. 818, 58 C. C. A. 256; United States v. Alcorn (C. C.) 145 Fed. 995; Morrison v. Richardson, 194 Mass. 370, 80 N. E. 468. To permit a recovery of actual damage, where liquidated damages have been provided for, is to nullify the statute or destroy a contract with reference thereto. The sole purpose of providing for liquidated damages is to prevent, in case of a breach, any question being raised as to the amount that shall be paid or recovered therefor.

The city, when it advertised for bids, informed prospective bidders that they would have to deliver at the time bids were submitted a check or money, as provided in section 420 of the charter. The purpose of requiring such deposit to be made was not only to insure good faith on the part of bidders, but to indemnify the city against the ex-

pense of readvertising (Erving v. Mayor, 131 N. Y. 133, 29 N. E. 1101), and also to notify bidders, if the contract were awarded to them, and they refused to enter into it, the precise amount of damage they would have to pay. If this be so, then the only damage to which the Seely-Taylor Company could be subjected for refusing to execute the contract after the same had been awarded to it was the forfeiture of its deposit.

[3] The fact that the deposit was returned after the city had requested the Seely-Taylor Company to enter into a contract and it had refused does not seem to me to be at all pertinent or germane to the question presented on this appeal. The rights of the parties had previously been fixed. It may be assumed there was no authority on the part of the city officials to return the deposit, or the Seely-Taylor Company to receive it, and that the city has a cause of action therefor against one or both, but this action is not brought to recover that sum. It is not even suggested in the complaint, the proof, or brief of counsel that this sum can be recovered in this action, or the action can be treated as one to recover that damage. It cannot be here recovered unless pleadings, proof, the theory upon which the action was tried, and the views of counsel are to be entirely disregarded.

[4] If the foregoing views be correct, then it follows that the complaint was properly dismissed as to the Seely-Taylor Company; and the sole question remaining is whether it was properly dismissed as to the other defendant, the Empire State Surety Company. The condition of its bond, in terms, made it liable, the Seely-Taylor Company having been awarded the contract and refused to execute it, for the damages here sought to be recovered. The Seely-Taylor Company was the principal and the surety company its surety. The bond was to indemnify the city against damage by the failure of the principal to do what it was legally obligated to. There was a legal obligation resting upon the Seely-Taylor Company, its bid having been accepted, to execute a contract. It refused to do this and by reason of such refusal became liable to pay whatever damage the city sustained. This damage had been agreed upon in advance, which sum was paid by forfeiting to the city the amount of the deposit. The principal having paid all the damage sustained by the city, the surety was thereby discharged. When a principal discharges his full obligation, then his surety is also discharged.

[5] The agreement on the part of the surety to pay any sum for which the principal was not liable was without consideration. That was not the purpose of the bond, and to this extent it cannot be enforced. It is suggested that the bond was in the nature of a separate undertaking on the part of the surety, and was authorized by section 349 of the Revised Ordinances of the city.

[6, 7] This ordinance was not offered in evidence, and the court cannot take judicial notice of it. Porter v. Waring, 69 N. Y. 250; People ex rel. Cross Co. v. Ahearn, 124 App. Div. 840, 109 N. Y. Supp. 249; City of New York v. Knickerbocker T. Co., 104 App. Div. 223, 93 N. Y. Supp. 937. But, if considered as in evidence, it would not aid the city, because so far as it relates to the payment of damages

for the refusal of the principal to enter into a contract awarded it is inconsistent with section 420 of the charter. The power on the part of the city to pass an ordinance is derived from its charter, and an ordinance, in so far as inconsistent with the charter, is void. Phelps v. Mayor, 112 N. Y. 216, 19 N. E. 408, 2 L. R. A. 626; City of Rochester v. West, 29 App. Div. 125, 51 N. Y. Supp. 482, affirmed 164 N. Y. 510, 58 N. E. 673, 53 L. R. A. 548, 79 Am. St. Rep. 659; Broadway R. R. Co. v. Mayor, 49 Hun, 126, 1 N. Y. Supp. 646; Cowen v. Village of West Troy, 43 Barb. 48; Dillon on Municipal Corporations (5th Ed.) 587. Section 420 of the charter provides what damages shall be paid by a bidder whose bid has been accepted for refusing to enter into a contract. Any attempt on the part of the city by an ordinance to impose any greater damage is ineffectual and cannot be enforced.

My conclusion, therefore, is that the complaint was also properly dismissed as to the surety company.

[8] As to the appeal by the Seely-Taylor Company, I do not think the court erred in denying its motion for an extra allowance of costs. The trial was not a long one, nor were there in my view difficult questions of law involved. The case was not difficult and extraordinary within the meaning of the statute for which an extra allowance of costs may be awarded.

The judgment and order appealed from, therefore, should be affirmed, without costs to either party.

CLARKE and SCOTT, JJ., concur.

INGRAHAM, P. J. (concurring). Under the form of the bid submitted by the Seely-Taylor Company, I think that company became obligated to execute the contract which was annexed to and a part of the bid if the contract was awarded to it, and was not authorized to withdraw a bid after it was submitted. The defendant was therefore liable for the damages sustained by the plaintiff in consequence of its failure or refusal to execute the contract. Under section 420 of the New York charter (chapter 466 of the Laws of 1901), however, the extent of this liability is fixed by the provision which required that the deposit made by the bidder with the comptroller at the time of making his bid should be the liquidated damages to which the plaintiff would be entitled if the accepted bidder refused to execute the contract. The plaintiff is therefore limited to the amount of such deposit as the damages to which it would be entitled for a breach of the obligation to execute the contract by the bidder. It appears by the record that that deposit has been returned to the bidder, but the effect of such return is not presented on this appeal. The only doubt I have is as to whether that amount could be recovered in this action, but I am inclined to think the court was right in view of the pleadings in dismissing the complaint. I have no doubt but that the liability of the defendant the Empire State Surety Company was limited to the obligation of the bidder, and that, therefore, the complaint was also properly dismissed as to it.

For these reasons, I concur in the conclusion of Mr. Justice Mc-LAUGHLIN that the judgment should be affirmed.

LAUGHLIN, J. (dissenting). The facts are sufficiently stated in the opinion of Mr. Justice McLAUGHLIN I think, with the exception that the proposed contract and specifications upon which proposals were invited contained express references to certain sections of the ordinances of the city as authority for requiring certain things, and, among others, that the proposals should be accompanied by an undertaking in the form thereby required, which is the form of undertaking executed by the respondent surety company. It would have been more satisfactory had the city proved the ordinance, but I think that we may fairly assume that the undertaking was required thereby. I concur in the view that the surety company is not liable if the bidder is not; but I am of opinion that, although the bidder did not execute the undertaking, it became bound to the same extent as the surety, for its proposal could be regular and received only in the event that it submitted it in writing with such an undertaking. The liability of the principal, therefore, is to be read into the undertaking. I am of opinion that the provisions of section 420 of the charter are not exclusive, and that it was competent for the municipality to require, as it evidently has required by ordinance, that the bidder shall accompany his proposal by an undertaking to the effect that if the contract shall be awarded to him, and he fails to execute it, he and his surety shall be liable to the city for the difference between his proposal and the proposal upon which the city is obliged to award the contract at a subsequent letting. This is a provision for additional protection to the city over and above the protection which section 420 of the charter was designed to give. Doubtless the liquidated damages over and above the expense of readvertising would have to be applied in reduction of the liability of the bidder and his surety. We are not now concerned with the return of the check deposited with the bid for manifestly the action of the comptroller and of the sinking fund commissioners in returning the check does not constitute an adjudication that the defendants are not liable on the undertaking. The Legislature, I think, did not intend that the forfeiture of the check would in all cases make the city whole for the damages it sustained. Such a construction would leave it open to bidders, by collusion, to withdraw all of their bids one after another, and to submit higher proposals on a reletting of the work, and would open the door to collusion and fraud between them and public officials. A person submitting a proposal for public work under the Greater New York charter is, of course, not entitled to have the work awarded to him, even though he be the lowest bidder, and he cannot recover damages against the city for the wrongful letting of the work to a higher bidder without readvertising (Molloy v. City of New Rochelle, 198 N. Y. 402, 92 N. E. 94, 30 L. R. A. [N. S.] 126); but I agree with the views expressed by Judge Gray in Molloy v. City of New Rochelle, supra, that, if the bidder should proceed with diligence, he would be entitled, in the event that the contract is awarded without reletting, to a mandamus · commanding that it be

let to him. The proposal, however, submitted pursuant to the provisions of the charter and the ordinance and plans and specifications and proposed contract obligated the bidder to enter into a formal contract if the contract should be awarded to him, and he cannot in my opinion withdraw his proposal at will, or even for a mistake made by himself in calculating the items upon which he based it. When, therefore, the contract was awarded to the respondent Seely-Taylor Company and it refused to execute the same, both it and the surety company became liable pursuant to the provisions of the undertaking. Thereby the record discloses a legal contract obligation by which the bidder and its surety are held. It is, however, competent for a court of equity to relieve it from its obligations and to cancel its and the surety company's liability, or to enjoin the municipality from enforcing the liability. This, however, is an action at law to recover on the legal liability of the contractor and the surety company, and, if they wish to avoid their apparent legal liability, they must plead by way of counterclaim the facts entitling them to a cancellation of the proposal and the undertaking, or to an injunction against the enforcement of the undertaking. Born v. Schrenkeisen, 110 N. Y. 55, 17 N. E. 339; Moffett, Hodgins & Clarke Co. v. Rochester, 178 U. S. 375, 20 Sup. Ct. 957, 44 L. Ed. 1108; City v. Dowd Lumber Co., 135 App. Div. 244, 120 N. Y. Supp. 370. The equitable counterclaim should be first tried at Special Term. Of course, this regular method might be waived by consent, and the defendants might in that event be relieved by proof of the facts. Born v. Schrenkeisen, supra; City of New York v. Dowd Lumber Co., 140 App. Div. 358, 125 N. Y. Supp. 394. The court, however, in the case at bar was not at liberty to dismiss the complaint, for a question of fact was presented as to whether or not there was an error in the proposal which resulted from an excusable mistake on the part of the bidder, and the testimony of its president was not conclusive on that point, and, even if the trial of that issue by the court was waived, it presented a question to be determined by the jury.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.