Matter of the Application of E. W. Foley Contracting Corporation for a Peremptory Writ of Mandamus against Frederick Stuart Greene, Commissioner of Highways of the State of New York.

(Supreme Court, Albany Special Term, September, 1919.)

Mandamus — when application for, denied — contracts — highways — when bid may not be withdrawn — equity.

After a bid or proposal for a highway contract has been deposited with the state commissioner of highways in accordance with the rules for bidding, it may not be withdrawn even with the consent of the commission.

Where in the depositing of such a bid a mistake has been made, equity can afford no relief unless such mistake was unintentional.

Petitioner at the time of its deposit of a bid for a highway contract was informed that it could not deposit a second and larger bid unless there was deposited therewith an amount equal to three per centum of the amount of such bid. Petitioner brought only a certified check sufficient in amount to be submitted with the first bid, which was enclosed therewith, by mistake. Shortly thereafter petitioner deposited an additional sum in cash and announced that it desired to supersede the first bid, by the second bid, pursuant to which the contract was awarded, but the state comptroller refused to approve the

awarding of the contract.   Upon an application for a peremptory mandamus to compel the awarding of the contract, *held,* that there was no such mistake in the deposit of the first bid as equity was called upon to correct, and the application will be denied.

APPLICATION for a peremptory writ of mandamus.

James A. Parsons, for Foley Corporation.

Charles D. Newton, attorney-general (Arthur E. Rose, third deputy attorney-general, of counsel), for Commissioner of Highways.

HINMAN, J.   On July 22, 1919, proposals were received by the state commissioner of highways for the completion of county highway No. 1400, in the county of Seneca.   On that morning and prior to one o'clock, the time for opening bids, the petitioner, through its vice-president, E. W. Foley, deposited in a box provided for that purpose in the highway department offices a proposal or bid for $118,205.50.   It is undisputed that at the time of the deposit of this bid Foley had in his possession another prepared bid for $123,357.70 and desired to deposit such second bid but was informed that he could not deposit such bid unless he deposited therewith an amount equal to three per centum of the amount of the bid; that he did not have such amount with him but had brought with him only a certified check for $3,600, being an amount sufficient, under the rules and the statute, to be submitted with the lesser of the two bids.

There is a conflict between the claim of the petitioner and the affidavit of Royal K. Fuller, the secretary of the commissioner of highways, as to what happened at this juncture.   The petitioner claims that said Foley informed the said Fuller " that he wanted to preserve his right to bid on said contract and that said

Supreme Court, September, 1919.     [Vol. 108.

Fuller informed him that in order to preserve his rights he had better deposit the bid for the lesser sum and then, when he had obtained the currency required to make up the amount necessary to bid the larger sum ($120 in addition to the certified check for $3,600), that a memorandum could accompany the bid for the larger sum which would have the effect of superseding the lesser sum. That thereupon said E. W. Foley deposited the bid for the smaller sum and by mistake a certified check for $3,600 was enclosed therewith, and that within fifteen minutes thereafter, deponent having obtained $120 in currency, the sum necessary to make up the amount to be deposited with the larger bid, returned to the highway department and informed said Royal K. Fuller that by mistake he had included in the first bid deposited, the certified check for $3,600 but that he now desired to put in the bid for the larger sum in place of and as a substitute for the one for the lesser sum. That thereupon said Royal K. Fuller prepared the following memorandum and enclosed same with the bid for the larger sum: ' This bid supersedes one formerly deposited for $118,000 and ck. deposited with that bid applies to this one. E. W. Foley.' "

The contention of Fuller, as expressed in his affidavit, is that he " denies he advised E. W. Foley that in order to preserve his rights he had better deposit his bid for a lesser sum; that at the time the said bid for $118,205.50 was deposited by the said E. W. Foley, no conversation occurred as to any other bid superseding said bid; that at the time of the deposit of the first bid said Foley also had the second bid in his possession and desired to deposit such second bid; that deponent informed him that he could not deposit such bid unless he deposited therewith an amount equal to three per centum of the amount of the bid;

that said Foley did not have such amount with him and he, therefore, deposited the first bid, and soon afterward Mr. Foley was informed in the presence of deponent that it had been the custom and practice of the department to permit a bidder to supersede a bid deposited in the bidding box by another bid and to have the check deposited with the first bid apply to the second bid; thereupon said Foley left the deponent and returned later with $120 in cash, which he deposited with deponent and announced that he desired to supersede the bid which he had deposited by another bid, and he thereupon had deponent write the superseding note contained in the second bid.''

The only other bids upon this contract being larger than the larger sum bid by the petitioner, the highway commissioner awarded the contract to petitioner for such larger sum. A contract embodying such sum was forwarded to petitioner, was executed by it and was returned to the department. A suitable bond was also executed by petitioner but when the contract was forwarded to the state comptroller for his approval, as required by law, the comptroller refused to approve the awarding of the contract for the second bid.

At the request of the highway commissioner the attorney-general rendered an opinion as to the legality of the award and held that after a bid or proposal for a highway contract has been deposited with the state commissioner of highways it cannot be withdrawn, even with the consent of the commission, unless an unintentional mistake has been made for which a court of equity would grant relief and that the rule of the commission, embraced in the rules and regulations of the department, termed '' information for bidders,'' that '' permission will not be given to withdraw, modify or explain any proposal or bid after it has been deposited with the state commission of highways,''

is as binding upon the commissioner as upon the contractor.

Upon the receipt of the opinion of the attorney-general, the highway commissioner forwarded a new contract to the petitioner for the lesser sum bid, to be executed in place of the contract which had been previously signed by petitioner. This the petitioner refused to do and has brought this proceeding praying that a peremptory writ of mandamus issue requiring the highway commissioner to wholly reject the first bid and to award said contract without considering said bid.

In his opinion the attorney-general says: " In re *Kimball* v. *Hewitt*, 2 N. Y. Supp. 697, it is held that, although in cases of private contracts a bidder can always withdraw its offer before its acceptance, a different rule prevails in the case of public contracts, the reason being that in public contracting all parties are operating under regulatory statutes and subject to the restrictions thereby imposed; and that if bids were permitted to be withdrawn, the highest bidder might be made the lowest by the withdrawal of all other bids, thus inducing fraud.

" The question of withdrawal of bids is also discussed in re *City of New York* v. *Seely-Taylor Co.,* 149 App. Div. 98, in which it was held, Justice McLaughlin writing the opinion, that if a contractor made an unintentional mistake in its bid, then undoubtedly, before the bid was acted upon it could be withdrawn and the court in equity could relieve it from executing a contract which it never intended to make."

I cannot find anything tending to indicate that this is not a proper statement of the principles involved here or that a statute, ordinance or regulation prohibiting an amendment or a withdrawal of a bid is not constitutional, legal and binding upon the bidders.

Whether such a regulation is binding by way of estoppel or by contract or because such a requirement is the exercise of the police power in preventing fraud and collusion and in the interest of competition in the awarding of public contracts, is not clear from an examination of the authorities but it is clear that such a regulation is a proper one and legal and binding.

The commissioner of highways is given the power under section 130 of the Highway Law to prescribe and furnish forms for the submission of proposals and may prescribe the manner of submitting the same. He is also required to award the contract to the lowest responsible bidder. He is given the power to reject any or all proposals and may advertise for new proposals if, in the opinion of the commission, the best interests of the state will thereby be promoted.

The highway commissioner had the right to provide a rule for bidding that would prevent the withdrawal, modification or explanation of a bid after it had been deposited. I agree with the attorney-general that such regulation was binding upon the commissioner equally with the contractor. Upon the same grounds of public policy which have sustained the rule itself in public contracts, all the bidders had the right to expect that it would be applied indiscriminately.

The commissioner could not reject the lower bid of the petitioner upon any ground of " lowest responsible bidder," since the question lies between two bids of the same party. It is equally clear that he could not reject the first bid upon the theory that the best interests of the state would thereby be promoted, since the first bid was the lower and the rejection of it would be in violation of its own rule.

The sole question is as to whether there was any mistake in the deposit of the first bid which equity can be called upon to correct.

A unilateral mistake may be sufficient to justify a

Supreme Court, September, 1919. [Vol. 108.

rescission of the legal relation existing by virtue of a bid upon public work, upon the theory that there was no contract and in the eye of the law no meeting of the minds. A court of equity will grant relief in a proper case but an examination of the cases seems to indicate that relief has been granted only where there was an actual mistake in the bid itself, such that it failed to express the intention of the bidder at the time he offered it. *City of New York* v. *Dowd Lumber Co.,* 140 App. Div. 358; *City of New York* v. *Seely-Taylor Co.,* 149 id. 98; *Harper, Inc.,* v. *City of Newburgh,* 159 id. 695; *Moffett, Hodgkins & Clarke Co., Inc.,* v. *Rochester,* 178 U. S. 373.

There is a conflict between the version of petitioner and that of the secretary of the commission as to what transpired in relation to the depositing of the first bid. If this conflict were important it might require that the issue be tried out in an action for rescission of the legal relation existing therefrom, but under either version the petitioner does not seem to have any remedy. Clearly he has no remedy under the version of the facts set forth in the affidavit of Mr. Fuller, since his affidavit makes it clear that no mistake was made in depositing the first bid and that Mr. Foley relied upon his right to supersede the same upon obtaining subsequent information that he had a right to do so.

Taking the version of petitioner as to the facts, the only theory upon which relief can be granted is that an unintentional mistake has been made and such that the bid sought to be rescinded did not express the intention of the bidder. In this case, the petitioner admits that he put in his first bid to preserve his rights and yet urges that he inserted with his first bid, by mistake, the check for $3,600 required by the rules and the statute as a guaranty that he would sign the contract if the same was awarded to him.

It is impossible to see how he could preserve any rights under his first bid without depositing such check. Clearly then it would have been an informal bid and not entitled to consideration under the rules and the statute. If we are to believe that Foley meant to preserve his rights by the first bid the only conclusion to be reached as to his intent was that he meant to make it a formal bid and so complied with the law as to the deposit, relying upon his right as a matter of law to supersede the first bid in accordance with the method subsequently followed.

If on the other hand we believe that he did make the $3,600 deposit by mistake in connection with his first bid, there is no credible theory upon which he can allege that he intended thereby to preserve any rights, since the first bid would have been informal and any second bid would have to be deposited in the box before the hour set in the advertisement for bids and no withdrawal of the informal bid would have been necessary any more than if he had never deposited it.

Thus, under his own theory, it is impossible to escape the conclusion that Foley intended to preserve the rights of his company as a bidder when he put in the first bid and complied with the law as to the deposit in order that it might be a good bid. So the bid thus deposited did express his intention at the time and his only mistake must have been one of law as to his right to supersede the bid. It is unnecessary, under such circumstances, to consider whether his reason for depositing the first bid was because he preferred at the moment to get the contract at that figure rather than risk the higher bid or because he doubted his ability to raise the necessary additional money in time to deposit the second bid. In either case he could only rely upon his right as a matter

of law to supersede the bid.  His subsequent change of mind or ability to obtain the necessary funds whereby he was led to put in the second bid did not constitute such an unintentional mistake in making the first bid as would entitle his company to relief in equity under any authorities that I have been able to find.  There was no mistake which equity can be called upon to correct and petitioner had no right to withdraw the bid even with the permission of the commission.

Since the petitioner does not seem to have any right to the relief sought, it is unnecessary to consider whether the correct remedy therefor would be by mandamus or by action for rescission of the first bid.

The application of petitioner is denied.

Application denied.