(78 Misc. Rep. 396.)

MANHATTAN WRECKING & CONTRACTING CO. v. EIDLITZ et al.

(Supreme Court, Appellate Term, First Department. December 6, 1912.)

1. EVIDENCE (§ 461*)—PAROL EVIDENCE—CONSTRUCTION OF CONTRACT.

Where a contract for the wrecking of buildings was uncertain as to the number to be wrecked, and contradictory, a diagram submitted to contractor to assist in preparing his bid was admissible to show that he knew that the buildings were only those shown by the diagram, and that a numerical description of them in the formal contract was a clerical error on defendant's part.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129–2133; Dec. Dig. § 461.*]

2. CONTRACTS (§ 93*)—MISTAKE—MUTUALITY.

For defendants to avail themselves of a mistake in the contract sued on, where there is no attempt to reform it, the mistake need not be mutual.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 415–419; Dec. Dig. § 93.*]

Appeal from City Court of New York, Trial Term.

Action by the Manhattan Wrecking & Contracting Company against Otto M. Eidlitz and another. Judgment for plaintiff, and defendants appeal. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued November term, 1912, before LEHMAN, PAGE, and HOTCHKISS, JJ.

Eidlitz & Hulse, of New York City (Martin A. Schenck and Frederick Hulse, both of New York City, of counsel), for appellants.

Feltenstein & Rosenstein, of New York City (Moses Feltenstein, of New York City, of counsel), for respondent.

HOTCHKISS, J. This action was brought to recover damages for the defendants' alleged breach of a contract, whereby the plaintiff agreed to wreck or demolish the buildings upon certain premises in this city, by which contract the materials in the buildings were to become the property of the plaintiff. The facts appearing upon the trial were substantially as follows:

The property upon which the buildings were located belonged to the Society for Ruptured and Crippled Children, and the defendants were the general contractors for the construction of a new building to be erected upon said premises. On May 11, 1911, plaintiff wrote to the Society, asking:

"Who has charge of accepting estimates for demolishing the old buildings for *your new hospital located at Forty-Second and Forty-Third street, City,* as we are desirous of submitting an estimate to you on this work?"

This letter was sent to the defendants, who, on May 27th, wrote to the plaintiff, informing it that its letter of May 11th had been referred to the defendants, and inclosing a "proposal form," upon which the plaintiff was asked to submit its estimate. A memorandum at the foot of this letter states that it contained "three inclosures." At the trial the defendants sought to prove that one of the inclosures was a diagram showing each of the old buildings to be demolished, by metes and bounds and also by lot numbers, by which diagram the several houses appeared to be numbered from 303 to 325, both inclusive, East Forty-Second street, and from 304 to *322* East Forty-Third street, 22 in all, and no others. This evidence was objected to, and excluded, "on the ground that all prior negotiations were merged in the agreement."

The said "proposal form," which contained minute details as to how the work was to be performed, was, very shortly after its receipt by the plaintiff, filled up, signed, and delivered to the defendants. In said form, the structures enumerated were "the buildings * * * now situated at 304 to *332* East Forty-Third street, inclusive, and 303 to 325 East Forty-Second street, inclusive," 27 in all. Having accepted the plaintiff's proposal, a formal contract, dated June 1, 1911, was entered into between the plaintiff and the defendants. In this contract, the work to be performed was described as follows:

"All demolition and removal of rubbish occasioned thereby, as per attached proposal, for and at the building for the New York Society for the Relief of the Ruptured and *Crippled, 303 to 325 East Forty-Second street.*"

The proposal attached to the contract is the one signed by plaintiff, as aforesaid; but none of the inclosures contained in said letter accompanied such proposal. Plaintiff's president (Levenson) testified

that, before submitting its proposal, he visited the buildings and discovered that all of the Forty-Second street buildings and 10 of the buildings on Forty-Third street, to wit, Nos. 304 to 322, inclusive, were vacant, in great disorder, and "wide open," "everything ripped out," but "that was not so with reference to the other five buildings; * * * people lived in them."

On or about June 2d, plaintiff began the demolition of the unoccupied buildings, but made no attempt to get possession of Nos. 322 to 332, inclusive, East Forty-Third street, until some days thereafter, when, having occasion to deliver to defendants a surety bond, required by the contract, Levenson called upon one of the defendants and asked:

"When do I get possession of the other five buildings?"

There was a sharp conflict of testimony at this point between Levenson and Eidlitz. Levenson testified that Eidlitz told him that he did not know the buildings were occupied; that he would communicate with the Hospital people and find out when they could get possession. Eidlitz swore that he then called Levenson's attention to the fact that the above five houses had been included in the contract by mistake, and that there was no intention to deliver them for demolition. While the testimony is conflicting as to details, it unquestionably appears that negotiations were then entered into between the parties for an adjustment of the difficulty, through the medium of a bond to protect plaintiff from what Levenson claimed would be its losses by reason of failure to deliver the five houses. These negotiations continued for some days, during which plaintiff went on with the work, but they finally failed, and on or about June 15th plaintiff ceased work. On the trial, plaintiff gave evidence tending to prove that it was ordered from the work by defendants; whereas, defendants' testimony was to the effect that plaintiff abandoned the work voluntarily.

While pursuing the work, plaintiff had removed all of a considerable portion of the valuable salvage to be found in the interior of the unoccupied houses, and had, according to its own estimate, performed about 25 per cent. of the total work of demolition on the same houses. The verdict was for the difference between the value of all the material in the 27 houses and the cost of recovering the same, including the demolishing.

[1] It will be noticed that the formal contract entered into between the parties is on its face indefinite and vague, if not contradictory, as to precisely what houses it covered. It says that the work is to consist of—

"all demolition and removal of rubbish * * * *as per* attached proposal *for and at* the buildings for the New York Society for the Relief of the Ruptured and Crippled, 303 to 325 East Forty-Second street."

Strictly construed, this may mean that the work is to be performed at the enumerated buildings on Forty-Second street in the manner set forth in the proposal attached. The proposal is not alluded to as describing the locus of the work, but for the purpose of showing how

it is to be performed. Yet, concededly, this was not the contract either party intended to make. The issue between the parties related solely to the five occupied houses on Forty-Third street. Manifestly, the diagram was a material piece of evidence to show that plaintiff knew, when it formulated its bid, that the buildings concerned were only those shown by the diagram, and that the numerical description of them in the proposal was a clerical error on defendants' part.

[2] To enable defendants to avail themselves of the defense of mistake, it is not necessary that the mistake should be mutual. Kirchner v. N. H. S. M. Co., 135 N. Y. 182, 189, 31 N. E. 1104; City of New York v. Dowd Lumber Co., 140 App. Div. 358, 125 N. Y. Supp. 394. The mistake in such a case is not the basis of any attempt to reform the contract. As was said in Born v. Schrenkeisen, 110 N. Y. 55, 17 N. E. 339:

"It is only where the action is to reform the agreement itself that it is required that it should be alleged in the pleading and proved at the trial that the mistake was mutual. Where there is no mistake about the agreement, and the only mistake alleged is in the reduction of the agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected."

It is argued, however, that the defense of mistake was not properly pleaded. The answer is certainly open to criticism in this as well as in other respects, and, had timely objection been taken, it might have been held insufficient to admit the excluded evidence; but in such case a motion to amend would have strongly addressed itself to the discretion of the trial court. As the objection was taken on another ground, the defect in pleading cannot be now urged.

For the reasons above given, and without discussing the other questions raised, the judgment must be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.