AMBROSE SCHALL, Respondent, v. SCHWARTZ & CO., INC., Appellant.

Second Department, January 5, 1917.*

Landlord and tenant — deposit by tenant to secure performance of covenants — lease construed — when landlord not entitled to retain deposit — reformation of lease — alleged mutual mistake in use of word — evidence — mistake of scrivener — proof not justifying reformation — failure to show actual intention of parties.

Where the lease of a moving picture theatre required the tenant to deposit a sum of money as security for the faithful performance of the terms, covenants and conditions of the lease, it being expressly understood that if the tenant " surrenders said premises or *disposes* thereof prior to the expiration of this lease" then the sum shall belong to the lessor as liquidated and stipulated damages, the assignee of the tenant, having been dispossessed by the landlord for non-payment of rent, is entitled to recover the deposit.

The landlord seeking to retain the deposit is not entitled to have the lease reformed so as to make the word " disposes " read " dispossess," which would entitle him to a forfeiture of the deposit, upon mere evidence that the landlord's lawyer, not being in the presence of the tenant, actually dictated the word " dispossess " instead of " disposes," but that the latter was inserted by the stenographer by mistake, especially so where he testifies that he read over the lease to the parties at the time of execution.

To authorize such reformation the evidence must go further and show that the scrivener was authorized by the parties to dictate the word " dispossess " and that the word was intended by them to be part of their actual contract.

APPEAL by the defendant, Schwartz & Co., Inc., from part of a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 22d day of March, 1916, upon the verdict of a jury rendered by direction of the court after the first cause of action set up in the complaint had been dismissed.

* Temporarily withheld by direction of the court.— [REP.

Defendant appeals from so much of said judgment as grants plaintiff damages under his second cause of action as to which the court directed a verdict.

*Abraham H. Sarasohn,* for the appellant.

*Almet R. Latson, Jr.,* for the respondent.

THOMAS, J.:

Schwartz & Co., defendant, for $175, and after enlargement of the building, $275 per month, leased in writing a moving picture place to Minnie Geiger, who kept it some three months and assigned it, with the deposit, to plaintiff, who had it two months and was dispossessed for non-payment of rent, whereupon the landlord, defendant, was unable to rent it for three months and then got $250 for two months and then got $200 per month. This action is to recover a $1,000 deposit less certain rent due, and the questions are (1) for what does the lease show the deposit was made, and (2) should the defendant have been allowed to show that there was a mistake in drawing the lease. The lease provides: "The party of the second part has this day deposited with the party of the first part the sum of One thousand Dollars as security for the faithful performance of the terms, covenants and conditions in the within lease contained, it being expressly understood and agreed that if the party of the second part surrenders said premises, or disposes thereof prior to the expiration of this lease, then and in that event said security shall belong to the party of the first part as liquidated and stipulated damages; and the parties hereby stipulate to treat said deposit as such liquidated damages, because they cannot ascertain the exact amount of damage which the party of the first part would sustain in the event of the breach or violation heretofore mentioned. If, however, all terms, covenants and conditions are fully complied with then and in that event, said security shall be returned to the said party of the second part." The introductory words show that the money was to secure the tenant's covenants, whatever they were, and the broad general sentence at the end of the paragraph is to the same effect. If there were nothing more, the defendant's right to keep the money would be undoubted.

(*Feyer* v. *Reiss*, 154 App. Div. 272.)   But the breadth of the stipulation is limited by the words in the first clause, that the money shall belong to defendant "if the party of the second part surrenders said premises, or disposes thereof prior to the expiration of this lease."   If the premises should be surrendered, the defendant would keep the money.   But what do the words "or disposes thereof" mean?   The defendant says that therein is the mistake, and that the words "or disposes" should be "or is dispossessed."   Technically, the tenant could not dispose of the premises, but he could alienate his estate for years, which would carry *pro tanto* a disposition of the premises. But why penalize the tenant for assigning the lease, as it provides that he "shall have a perfect right to assign this agreement * * * without the landlord's consent in writing." But the plaintiff, tenant, urges that the right to assign is "to any third person who is amply responsible, except to an Italian or Negro," and that the words "or disposes thereof" mean a disposition in violation of the right to assign, as, for instance, to one of the excepted nationality.   But the words "or disposes thereof" are general and without exception, and as may well be argued, too universal to be narrowed to the mere question of the race of an assignee.   To that plaintiff replies that words contracting the general words are found in the reason given for treating the deposit as liquidated damages, viz., "because they cannot ascertain the exact amount of damage which the party of the first part would sustain in the event of the breach or violation heretofore mentioned."   The respondent urges that the words "the event" refer to the surrender of the premises, and the word "violation" refers to "or disposes thereof."   That argument simply brings the consideration back to the reason for using the words "or disposes thereof" and makes no step forward, and leaves the language in all its breadth; so that, to a degree, it disputes the early right given to assign the lease.   But as the words are written they must be read with the sentence giving the limited right of assignment and to be confined to a violation of that right.   However, after reaching such conclusion, the court would be quite prepared to hear the landlord proffer evidence that there was such mistake as defendant indicates.   But he should approach the

question with competent evidence. It is expectable that he would show upon what the landlord and tenant did agree. What did the parties severally say whereby the contract was consummated in that regard? Did they discuss it with each other, or with the agent of one or the other? Mr. Hartman was the defendant's lawyer and prepared the lease. He testified that Geiger, referring to the tenant's father, was present at the execution of the lease, and he indicates that the tenant herself was also then present, and that he read it to both. He dictated the lease to his stenographer, but it does not appear that either of the parties was then present. What he, the defendant's lawyer, said to his stenographer is not evidence against the tenant. Apparently, he dictated the lease as it was, and presumably he so read it to the parties at the time of execution, although unfortunately his testimony that he read it carefully to the parties was rejected. But now he would testify that he did not dictate the words "or disposes thereof," but rather the words "or is dispossessed thereof." That would dispute the lease and his reading of it to the parties, and would impeach the stenographer's accuracy without any evidence that the proposed words in substitution in any degree or at any time and place were discussed by the parties so as to enter into their agreement. He is asked whether he had a talk with Geiger on the subject, but the exclusion was proper. The Geiger meant was the tenant's father, and no authority on his part to speak or to assent for the tenant is shown. Geiger, the father, was called as a witness by the defendant and asked for a conversation with Hartman and to hearing him dictate. But he should not testify unless he was an authorized agent. I find no legal attempt to show that a mistake was made. Both parties refer to *Pitcher* v. *Hennessey* (48 N. Y. 415). There the trial court excluded evidence tending to show the agreement of the parties as expressed in the words "risk of navigation" assumed by said Pitcher, and it was decided that the complaint was sufficient to allow evidence for the "reformation of the contract," to use Judge EARL's words, on account of mutual mistake, although the pleading alleging the facts showing the mistake did not specifically aver mistake. But the opinion shows that proof was required to show the agreement

and that " a mutual mistake was made in reducing the parol
agreement to writing and in signing the written contract."
As he points out, the mistake may have been that of the drafts-
man, a " mistake in reducing their agreement to writing,"
but I find no justification for basing correction or reformation
on the statement of the draftsman that he dictated the words
" or is dispossessed thereof," and his stenographer wrote " or dis-
poses thereof," without evidence that the agreement authorized
him to dictate what does not appear in the instrument, which
the parties executed under his supervision. In *Jamaica Sav-
ings Bank* v. *Taylor* (72 App. Div. 567) the scrivener reduced
to writing a contract for sale of land. The learned justice, with
much detail, showed what the contract was by careful review of
the evidence, and that there was error in the description of the
land sold. The case is in contrast to the present record, where
there is no legal attempt to show what the contract was — but
rather to base correction on the naked statement of the lawyer
that he dictated something that disputes the instrument. In
*Meyer* v. *Lathrop* (73 N. Y. 315) the question was whether an
instrument showed the real intention of the parties, and it was
decided that testimony was admissible to show there was a
mistake, and that it was signed " by the plaintiff and accepted
by Williamson," the other party, " under an entire misappre-
hension as to the nature and effect of the instrument." To
that end, of course, proof of the actual agreement was required.
The action was to foreclose a mortgage, and the answer set up
that it had been paid in the manner expressed in an agree-
ment. It was ruled that no reply to the answer was required,
and that the plaintiff could show the mistake and have
reformation by proving the mistake. There should be some
reference to *McNulty* v. *Prentice* (25 Barb. 204). There the
two copies of a paper evidencing a contract differed in that
one required a service by an apprentice for two years, two
months and fifteen days, and the other two years, ten months
and fifteen days. In the opinion it is said: " Indeed, I have
yet to see a single authority which holds that in a case like the
present, where the parol proof is offered by way of defense, not
to show the existence of a mistake, but to explain one patent
on the record, it is inadmissible." The question was whether

parol evidence was admissible to show that the word "two" was a clerical error for "ten," and while it was considered that the evidence should have been received, I find no suggestion that correction could be had without showing what the actual contract was. I discover nothing in the cases cited by appellant that aids her save on the question of pleading. In *City of New York* v. *Dowd Lumber Co.* (140 App. Div. 358) there was a patent error in the extension of figures. In *Mills Power Co.* v. *Mohawk Hydro-Electric Co.* (155 App. Div. 869) parol evidence was received that, in the words of Mr. Justice KELLOGG, "enlarges the horizon of the interpreter" of a grant. In *Manhattan Wrecking & Contracting Co.* v. *Eidlitz* (78 Misc. Rep. 396) a mistake in reducing an agreement to writing was corrected, but there was evidence to show what the true contract was. The answer in the action at bar does not declare a mistake, but the pleading shows it, and proper evidence to sustain such issue proffered was admissible. The defendant's misfortune is that it did not tender evidence competent to support the defense.

The judgment should be affirmed, with costs.

STAPLETON, MILLS and RICH, JJ., concurred; CARR, J., not voting.

Judgment affirmed, with costs.